## The State *v.* Nelson et al.

| | |
|---|---|
| 3 | 497 |
| 50 | 491 |
| 3 | 497 |
| 109 | 560 |
| 3 | 497 |
| 112 | 334 |
| 112 | 336 |
| 3 | 497 |
| 115 | 507 |
| 3 | 497 |
| 124 | 753 |
| 124 | 977 |

Such confessions of the accused alone as have been voluntarily made, uninfluenced by either hope or fear, can be given by evidence against him ; but they must be shown to have been thus made before they can be received.

The fact that the accused was in the stocks at the time that a confession of guilt was made by him, in which he had been placed merely for safe-keeping. will not render the confession inadmissible. Where the restraint is such only as is necessary for the safekeeping of the prisoner, it will not render his confession inadmissible.

Where a slave in confinement under a charge of murder, on a representation made to him by the overseer of the estate, a son of his master, "that it would be better for him to tell what he had done," confesses the crime, the confession cannot be given in evidence against him.

*Per Curiam:* Although opposite opinions have been entertained as to the question, whether a confession made to a person who has no authority over the prisoner, upon an inducement offered by that person, be admissible, it seems to be settled that if the inducement be offered by a master to a servant. or by any other person having authority over the prisoner, the confession will not be deemed voluntary, and will be rejected.

The jurisdiction of the Supreme Court in criminal cases being limited by the constitution, art. 63, to questions of law alone, it will not examine into the facts in any such case, for the purpose of determining whether the evidence authorized a conviction.

Questions in criminal cases can only be brought before the Supreme Court by a bill of exceptions to the opinion of the judge admitting or rejecting testimony, or to his charge to the jury, or by an assignment of error.

The fact that there is no judge to preside over the deliberations of the jury of freeholders, on the trial of slaves for criminal offences before the tribunals established by the stat. 1 June, 1846, and the impossibility, in consequence, of presenting to the Supreme Court, any question as to the sufficiency of the proof to justify a conviction by a bill of exceptions to the charge of a judge, is a difficulty resulting from the defective organization of the inferior tribunal, which can only be remedied by legislative interference.

APPEAL from a judgment rendered by a tribunal for the trial of slaves, organized under the stat. of 1 June, 1846, in the parish of St. James. This case was argued *ex parte* by

*Bérault*, for the appellants. The decision of the case depends on a correct application of two cardinal principles of the law of evidence relating to confessions of guilt; one of which is that the confession must be free and voluntary, and "before it is received in evidence in a criminal case must be shown to have been such." Greenleaf on Evidence. § 219, vol. 1, p. 263. "A free and voluntary confession," said Eyre, C. B. in Warickshall's case, "is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, and, therefore, it is admitted as proof of the crime to which it refers; but a confession, forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape, when it is to be considered as the evidence of guilt, that no credit ought to be given to it; and therefore it is rejected." The material inquiry, therefore, is, whether the confession has been obtained by the influence of hope, or fear, applied by a third person to the prisoner's mind. See Greenleaf, vol. 1, § 219. Phillips on Evidence. ed. 1843, C. and H. notes, vol. 1, p. 111.

This doctrine has been expounded by Hawkins : " As the human mind under the pressure of calamity is easily seduced, and liable in the alarm of danger to acknowledge indiscriminately a falsehood or a truth, as different agitations may prevail, a confession whether made upon an official examination or in a discourse with private persons, which is obtained from the defendant either by the flattery of hope or by the impressions of fear, however slightly the emotions may be implanted, is not admissible evidence ; for the law will not suffer a prisoner to be made the deluded instrument of his own conviction." 2 Curw. Hawk. 595, cited from Leach's Hawk. and approved in *State v. Aaron*, 1 South. 239. Phillips on Evidence, C. and H. vol. 2, p. 242.

In the case of the *State* v. *Field & Webber*, Peck's Rep. p. 140, the court, in treating of this subject, eloquently said : " The evidence of such confessions is liable to a thousand abuses. They are made by persons generally under arrest, in great agitation and distress, when each ray of hope is eagerly caught at, and frequently under the delusion, though not expressed, that the merit of a disclosure will be productive of personal safety. The confession is made in want of advisers, under circumstances of desertion by the world, in chains and degradation, with spirits sunk, fear predominant, hope fluttering around, purpose and views momentarily changing, a thousand plans alternating, a soul tortured with anguish, and difficulties gathering into a multitude. How easy it is for the hearer to take one word for another, or to take a word in a sense not intended by the speaker. And for want of an exact representation of the tone of voice, emphasis, countenance, eye, manner and action of the one who made the confession, how almost impossible it is to make third persons understand the exact state of his mind and meaning. For these reasons such evidenc is received with great distrust, and under apprehensions for the wrong it may do. Its admissibility is made to depend on its being free from suspicion that it was obtained by any threats of severity, or promises of favor, and of every influence, even the minutest." Cited in Ph. Ev. C. and H. notes, vol. 2, no. 216, p. 236.

On this subject see Green. Ev. vol 1, §. 219, p. 263, who says that : " Before any confession can be received in evidence in a criminal case, it must be shown that it was voluntary. The course of practice is to enquire of the witness whether the prisoner had been told that it would be better for him to confess, or worse for him if he did not confess, or whether language to that effect had been addressed to him."

The second ground of defence is approached with equal confidence, as the

confession of both *Nelson* and *Edwin*, (even admitting that, that made by *Nelson* was properly obtained), are extra-judicial, uncorroborated by any other proof of the "*corpus delicti*," and consequetly insufficient for their conviction. The doctrine is now well settled that, the mere confession of a crime, not made in the course of an examination before a committing magistrate or upon arraignment, or in other words, an extra-judicial confession, cannot warrant a conviction, unless fortified by other proof (dehors the confession), of the crime confessed. See Greenleaf on Evidence, vol. 1, sec. 217, p. 260, who in treating this subject says: "Whether extra-judicial confessions, uncorroborated by any other proof of the '*corpus delicti*,' are of themselves sufficient to found a conviction of the prisoner, has been gravely doubted. In the roman law, such naked confessions amounted only to a '*semiplenà probatio*,' upon which alone no judgment could be founded; and at most the party could only, in proper cases, be put to the torture. But if voluntarily made in the presence of the injured party, or if reiterated at different times in his absence, and persisted in, they were received as plenary proof. In each of the english cases usually cited in favor of the sufficiency of this evidence, there was some corroborating circumstance. In the United States, the prisoner's confession, when the *corpus delicti* is not otherwise proved, has been held insufficient for his conviction; and this opinion certainly best accords with the humanity of the Criminal Code, and with the great degree of caution applied in receiving and weighing the evidence of confessions in other cases; and it seems countenanced by approved writers on this branch of the law."

In the case now under consideration, not an iota of evidence corroborative of the crime charged can be found in the record, which is barren of any testimony to that effect. Not even the existence and disappearance of the victims are accounted for. They may be, so far as the record informs us, yet alive, and, in this state of uncertainty, the monitory voice of Sir Mathew Hale warns us, "Never to convict a man for stealing the goods of a person unknown, merely because he will give no account how he came by them, unless an actual felony be proved of such goods; and never to convict any person of murder or manslaughter, till at least the body be found dead;" on account of two instances he mentions, where persons were executed for the murder of others who were then alive, but missing.

The judgment of the court was pronounced by

KING, J. The appellants, who are slaves, were tried for the crime of murder, by a tribunal organized under the act of 1846, ('Acts, p. 114,) and found guilty. From the judgment pronounced upon that conviction, they have appealed.

The questions which arise are presented in bills of exception to the opinion of the inferior tribunal, receiving in evidence the confessions of guilt made by the accused, which were objected to on the trial, as not having been free and voluntary, but made under the exercise of improper influences on the minds of the prisoners. It appears that the confession of *Nelson* was made to the overseer of the plantation, who was also the son of his owner. The witness stated that the accused was in the stocks when the confession was made, and that he "told *Nelson* previously, that it would be better for him to tell what he had done."

The well settled rule of law is, that only such confessions of the accused as have been voluntarily made, uninfluenced by either hope or fear, can be given in evidence against him, and they must be shown to have been thus made, before they can be received. The circumstances of this case do not authorize the conclusion that, threats or violence were used to extort confessions. The accused, *Nelson*, was in the stocks, it is true, but only for safekeeping. As regards him, the only enquiry is, whether the inducement held out to him to confess was such as should have excluded the confession from evidence. Saying to a prisoner that "it would be better for him to confess," or words to that effect, has been repeatedly held to be such an inducement offered to the prisoner as will exclude his confession; and, although opposite opinions have been en-

tertained as to the question, whether a confession made to a person who has no authority over the prisoner, upon an inducement offered by that person, is receivable, yet it seems to be settled that, if the inducement be offered by a master to a servant, or by any other person having authority over the prisoner, the confession will not be deemed voluntary, and will be rejected. 1 Greenleaf on Ev. § 219, 220, 221, 222. McNally on Ev. 42, 43. Phil. on Ev.

The confession of *Nelson* comes strictly within the rules which should have excluded it from evidence. It was made to his young master, who was also his overseer, to whose authority he habitually submitted, to whom he would naturally look for protection, and upon being advised " that it would be better for him to tell what he had done." The admonition coming from such a source was well calculated to inspire the slave with the hope of protection from the consequences of his act if fully confessed, and his confession made under that impression should have been rejected. The conviction of the slave *Nelson*, based upon this evidence, must be set aside.

As regards the slave *Edwin*, his confessions were repeated and voluntary. No inducements were held out to him to confess, and he was under no other constraint than that necessary for his safe custody. But it is objected that, his confessions are the only evidence against him ; that they are imperfect, stating only in general that the accused "aided in killing two white men ;" that they are unsupported by any other proof of the *corpus delicti*, and are not sufficient to found a conviction upon ; that neither the time, place, nor manner of death, not even the existence and disappearance of the persons charged to have been murdered, are shown. We are referred to the record which is said to contain the entire evidence adduced against the accused, to establish this alleged irregularity, and the impropriety of the conviction. Our jurisdiction in criminal cases is limited in express terms by the constitution, article 63, " to questions of law alone," and we have uniformly refused to examine the facts, for the purpose of determining whether the evidence authorized a conviction. *State* v. *Fant*, 2 An. 837. *State* v. *Bogan*, Ib. 838. *State* v. *Peterson*, Ib. 921.

Questions in criminal matters can only be brought before us by bills of exception to the opinion of the judge admitting or rejecting testimony, or to his charge to the jury, or by assignments of error. But it is urged, that, constituted as the tribunal is before which slaves are to be tried for criminal offences, in which the justices and freeholders have equal authority, there being no judge to preside over the deliberations of the jury or to give them the law in charge, the question of the insufficiency of the proof to justify a conviction, can never be presented to the appellate tribunal, unless the latter be permitted to examine the evidence ; as such questions can only be presented in bills of exception to the charge of the inferior judge. The difficulty suggested is serious, but it results from the defective organization of the inferior tribunal, and can only be remedied by legislative interference.

As regards the slave *Edwin*, the judgment must remain undisturbed.

It is, therefore, ordered that, as far as relates to the slave *Nelson*, the judgment appealed from be reversed, and the cause remanded for a new trial, with instructions to the inferior court to receive no confessions of said slave *Nelson* which were not voluntarily made. As regards the slave *Edwin*, the judgment is affirmed.