# THE STATE OF NEVADA, Respondent, *v.* DANIEL E. HARKIN, Appellant.

CRIMINAL LAW — CHARGING MATTER OF FACT.  In a murder case, where it appeared that defendant had kicked deceased in the face, but the prosecution contended that the killing was by a kick upon the breast, and offered testimony to show bruises there; and the judge, in overruling objections to such testimony, remarked, in the hearing of the jury, " that there was as much testimony that defendent had kicked deceased upon the chest as upon, the face ":  *Held,* error, as charging in respect to mattter of fact.

EXPRESSION OF JUDGE'S OPINION AS TO FACTS IN RULINGS AS TO EVIDENCE.  The opinion of a judge in respect to a matter of fact in a criminal case can be as effectively conveyed to the jury by expressing it in their hearing while ruling upon an objection to evidence, as by embodying it in an instruction to them; and he has no more right to volunteer such an opinion in one case than in the other.

ATTEMPT TO CURE ERRONEOUS EXPRESSION OF OPINION AS TO FACTS.  Where a judge in the course of a murder trial, in overruling an objection to testimony tending to show that defendant had kicked deceased fatally in the breast, remarked, " that there was as much testimony that defendant had kicked deceased upon the chest as upon the face," and afterward took occasion to state to the jury that in making the remark he was simply ruling upon an objection to testimony, and addressing himself more directly to counsel, and that he did not wish to be understood as saying how much or how little testimony there was upon any particular point, and that the whole matter was for them to pass upon :  *Held,* that the error of the remark, if curable at all, was not cured by the caution—there being no retraction of his opinion, but merely a disclaimer of opinion as to the absolute weight of such testimony.

ERRORS OF INADVERTENCE AS FATAL AS WILLFUL ONES.  If a judge in the course of a criminal trial expresses in the hearing of the jury his opinion as to a matter of fact, the injury to defendant demands redress as imperatively in the case of a mere inadvertence on his part as in case of a willful evasion of the law.

INDICTMENT FOR MURDER — DEMURRER — SURPLUSAGE. Where an indictment for murder, in other respects sufficient, charged that defendant "feloniously, willfully and with malice aforethought, *to kill William Hardwick*, did with his hands and feet strike, beat and kick," &c., going on to charge the infliction thereby of mortal wounds upon deceased, from which he died; and a demurrer was interposed on the ground that the facts stated did not constitute an offense known to the statute: *Held*, properly overruled, for the reason that the words "to kill William Hardwick" might be rejected as surplusage, and an indictment for murder, good on general demurrer, would still remain.

INDICTMENT CHARGING MURDER ARGUMENTATIVELY AIDED ON GENERAL DEMURRER. Where in an indictment for murder, otherwise sufficient, it was substantially charged that defendant with malice aforethought struck deceased, thereby giving him a mortal wound, of which he died; and it was objected on general demurrer that the killing was not charged in positive and direct terms, but only argumentatively: *Held*, that though such an indictment might be held defective on special objection, it was aided on general demurrer.

APPROVED FORMS OF INDICTMENT SHOULD BE ADHERED TO. Though indictments in unusual language may be held sufficient, nothing is gained by a departure from approved precedents and forms.

APPEAL from the District Court of the Second Judical District, Douglas County.

The difficulty, which resulted in the killing of deceased, occurred in a place known as the Snug Saloon, in Genoa, Douglas County. Several persons were present, besides deceased and defendant. Hardwick was under the influence of liquor. After some conversation with Harkin about twenty dollars which Hardwick owed Harkin, Hardwick referred to threats that he said Harkin had made against him. Harkin denied making any threats. The two men, together with a third person present, then drank together at Hardwick's expense. Soon afterward Hardwick turned to Harkin, and insisted that Harkin had threatened him, and that he, Hardwick, was a poor        *        *        *        *        * [using a coarse phrase], and had just as lief die there as any place, and spoke about going out and fighting. Upon this Harkin struck Hardwick and knocked him down, and then jumped upon him and kicked him several times. Hardwick lay bleeding and insensible for some time, and died four or five days afterward.

Defendant, being convicted of murder in the second degree,

was sentenced to the State prison for twenty-five years. A motion for new trial having been overruled, this appeal was taken.

*Ellis & King* and *Thomas Wells*, for Appellant.

I. The indictment does not precisely and with certainty charge defendant with killing Wm. Hardwick. It only charges such killing, if at all, by argument, or by inference, or by conclusion of law. See 4 Blackstone, 306, 307, 310 and 376. It nowhere directly and certainly charges that defendant *killed* or *wounded* the deceased. It is claimed that " to kill " is used, and that this, in connection with what follows, is equivalent to charging that defendant killed deceased. We think not. It may be inferred from the language used that defendant killed deceased, but in neither is it directly or with certainty charged that he did kill him.

II. The judge had no right to make the statement that there was as much evidence that defendant kicked deceased on the chest as on the face. It was without warrant of law or fact. It was without his province as judge. It was as much calculated to impress and influence the minds of the jury, as if he had said " your objection to the evidence of and concerning the autopsy to be given by the medical witnesses is not good, and is overruled because there is positive evidence that defendant *did kick* Hardwick on the breast." 3 Gr. & ·Wat. 1371; *State* v. *Ah Tong, ante*, 148. It matters not *when*, during the progress of a trial, a court invades · the province of the jury, by charging as to evidence; or by saying *any* thing calculated to impress or influence their minds, or shape their conclusions as to what has been proven; or as to what degree of credence is to be given to any particular part of the testimony; or to the evidence upon any given point or fact in the case. See also, 4 Winston, 47; 3 Jones, (Law) 6; 14 Wis. 427; 27 Cal. 513; 16 Cal. 98; Const. Nev. Art. VI, Sec. 12.

III. Defendant asked the court (not in the presence of the jury) to remedy the wrong. The record shows what the court did in response. It made " bad, worse." Defendant tried again to have the injustice (not willful, we are sure) repaired, by asking certain instructions, which were refused; and again by a motion for a new

trial, which was denied.   In intendment of law, and in justice to
the defendant, the utterance complained of should be treated the
same as an instruction to the jury.   See 1 Gr. & Wat. on New
Trials, 310 *et seq.* ; 12 Johns. 513 ; 3 Wend. 102 ; 12 Mass. 22 ;
11 Pick. 140, 162 and 368 ; 6 Cow. 682 ; 17 Cal. 142.

*J. W. Healy*, for Respondent.

I. The indictment was sufficient, because it complied fully and
substantially with the requirements of the statute in " containing
the title of the action, specifying the name of the court to which
the indictment is presented, and the names of the parties ; a state-
ment of the acts constituting the offense in ordinary and concise
language, and in such a manner as to enable a person of common
understanding to know what is intended."   Crim. Prac. Act, Secs.
from 233 to 246 ; *State* v. *Anderson*, 3 Nev. 255 ; *People* v. *Stev-
enson,* 9 Cal. 273 ; 9 Cal. 576 ; 10 Cal. 313 ; 27 Cal. 507 ; 34
Cal. 191, 211.

II. The remark of the judge " that there was as much testimony
that defendant had kicked deceased upon the chest as upon the
face " should not be considered fatal, or even sufficient ground for
a new trial, when upon suggestion of counsel for defendant the
court fully corrected the error and closed the correction by saying:
" The whole matter is, for the jury to pass upon, and they will ob-
serve for themselves what the testimony is."   *People* v. *Hender-
son*, 28 Cal. 465 ; *People* v. *Moore*, 8 Cal. 90 ; *People* v. *Garcia*,
25 Cal. 531.   The court by its remark was only giving a reason
for its ruling upon the admission of evidence in relation to bruises
on the chest, and it may be fairly interpreted to have been only a
statement of the evidence.   The judge " may state the testimony
and declare the law."   Stats. 1861, 472.   It was not possible to
rule upon the question of the admissibility of the testimony regard-
ing wounds on the breast of deceased, without allowing the jury
to glean inferentially the opinion of the court upon the question of
evidence as to blows upon the chest.

*L. A. Buckner*, Attorney-General, also for Respondent..

By the Court, GARBER, J.:

The appellant was convicted of murder in the second degree, on an indictment accusing him of the crime of murder, committed as follows: " That said Daniel E. Harkin, of the county of Douglas, State of Nevada, on the ninth day of November, A. D. 1871, or thereabouts, at Genoa, county of Douglas, State of Nevada, without authority of law, feloniously, willfully, and with malice aforethought *to kill William Hardwick*, did, with his hands and feet, strike, beat and kick the said William Hardwick in and upon the head, neck, breast and body; then and there, by said beating, striking and kicking, giving unto said William Hardwick several mortal strokes, wounds and bruises, in and upon the head, neck, breast and body of him, said William Hardwick; from which said several mortal strokes, wounds and bruises, given as aforesaid by said Daniel E. Harkin, he, said William Hardwick, died, on the fourteenth day of November, A. D. 1871, at Genoa, in the county of Douglas, State of Nevada."

The defendant demurred, on the ground that the facts stated do not constitute a public offense, as known to our statutes. The demurrer was overruled. On the trial, the prosecution contended that the death resulted from a kick inflicted on the breast of deceased, and introduced testimony tending to show that the defendant knocked the deceased down and kicked him on the face, and also on the breast. The defendant contended that deceased was not kicked on the breast, and that the wound or bruise on the breast resulted from a fall, which, it was testified, happened the day before the affray. The testimony tending to establish the fact of the kicking on the face was much stronger and more positive than that going to show a kicking on the breast.. The prosecution was allowed—and properly allowed—against the objection of the defendant, to prove by physicians that they detected signs of bruises or ecchymosis on the breast. The point of the objection was, that the state had not shown that any wound or bruise had been inflicted upon the breast of the deceased by the defendant. In overruling this objection, the judge remarked, in the presence and hearing of the jury, " that there was as much testimony that

defendant had kicked deceased upon the chest, as upon the face."
To the use of this language in the hearing of the jury, the defend-
ant then objected.    The record further shows, that " after all the
testimony was in, and just before the commencement of the argu-
ment, the court remarked as follows : ' Upon suggestion of counsel
for the defendant, and in order that, beyond any peradventure, the
jury may have no misunderstanding as to the words or meaning of
the court, when, in ruling upon an objection to certain testimony,
the court said that there is as much testimony that the defendant
kicked deceased upon the breast as upon the face, or used words
to that effect, the court wishes to say that it was simply ruling
upon the objection as it was made, and the question was as to the
competency · of the testimony objected to.    The testimony was
allowed, and the objection was overruled.    This court does not
wish to be understood as saying how much or how little testimony
there is upon any particular point.    The whole matter· is for the
jury to pass upon, and they will observe for themselves what the
testimony is ' ; and that the above remarks were not delivered
direct to the jury, as though the court were delivering an oral
charge to them, but the court spoke and acted more directly to
counsel for defendant, precisely as when making the ruling upon
the point in which the alleged objectionable words were used.

" Nothing was then said further, and the argument then com-
menced."

Had the language objected to occurred in the written instruc-
tions given to the jury, the use of it would, beyond question, have
constituted such manifest error as to entitle the defendant to a new
trial.    The wit of man could scarcely devise a more palpable viola-  .
tion of that provision of our organic and statute law, which prohibits
judges from charging juries in respect to matters of fact.    " The
great object of this provision is to prevent the judge from interfer-
ing with the province of juries by any statement of his own judg-
ment or conclusion upon matters of fact; to guard against any
bias or undue influence which might be created in the minds of
jurors, if the weight of the opinion of the court should be permitted
to be thrown into the scale, in deciding upon issues of fact."    9
Allen, 279.

It is evident that the opinion of the court can be as effectively conveyed to the jury by expressing it in their hearing while ruling upon an objection to evidence, as by embodying it in what purports to be a declaration of the law for their instruction. Accordingly— and we think correctly—it has been held, that the judge has no more right to volunteer, before the jury, his opinion upon a material fact in controversy, while deciding a question of law on the trial, than he has to charge the jury in respect to such fact.  27 Cal. 319 ;  2 Winston, 47.   The right to a decision on the facts, by a jury uninfluenced and unbiassed by the opinion of the judge, has been deemed worthy of a constitutional guarantee.   It cannot be lawfully denied, by the simple evasion of looking at the counsel instead of at the jury, or of foisting the opinion into a ruling upon testimony.

The opinion here expressed was entirely uncalled for.  It was not necessary, in order to explain the ruling, to say anything about the relative weight of the testimony.  It was enough that there was testimony sufficient in law to authorize the jury to infer from it the fact that the deceased sustained the injury in question at the hands of the defendant.  6 Nev. 349–350.  The necessity imposed upon the court of deciding the question of law whether there was any evidence from which the jury could draw a certain inference, afforded no pretext for the announcement of an opinion on the question of fact as to the weight of such evidence, as compared with other testimony in the case.

The error, if curable, was not cured by the remarks made at the close of the testimony.  At best, they left the matter where it was before.   There was no retraction of the opinion that the testimony tending to prove the two facts referred to was equiponderant ; but merely a disclaimer of any opinion as to the absolute weight of such testimony.   As we held in *State* v. *Ah Tong, ante,* the express statement that the whole matter was for the jury to pass upon was insufficient to obviate the effect of the opinion previously expressed.

Moreover, it is difficult to give to these remarks any pertinency whatever, without regarding them as an oral instruction to the jury ; and, so considered, the fact that they were not reduced to writing

would constitute, of itself, ample ground for a reversal. *People* v. *Bonds*, 1 Nev. 33; *People* v. *Ah Tong*, 12 Cal. 346.

Of course, we impute no want of fairness or impartiality to the learned judge before whom this case was tried. Such inadvertence as this evidently was will sometimes occur in the hurry of a trial, with whatever purity and ability justice is administered. But when it does occur, the injury to the defendant demands redress as imperatively in the case of a mere inadvertence, as in case of a willful evasion of the law; and, we think, it is shown that to tolerate the former would necessarily result in giving free scope to the latter.

The demurrer to the indictment was properly overruled. Rejecting as surplusage the words " to kill William Hardwick," an indictment good on general demurrer remains. 17 Cal. 169. These words may be disregarded as though they were struck from the indictment. 1 Bishop's Crim. Prac., § 231. It will then charge all the elements of, or facts necessary to constitute the crime of murder as defined in our statute, viz: that at a time mentioned, at a place within the jurisdiction of the court, the defendant did unlawfully kill the deceased with malice aforethought. *People* v. *Cronin*, 34 Cal. 209; *Newcomb* v. *The State*, 37 Miss. 396; *State* v. *Verrill*, 54 Maine, 408. It is urged that the killing is not charged in positive and direct terms, but only argumentatively and by inference. We are inclined to think that if this objection had been distinctly specified in the demurrer, it should have been sustained. But, if the statement that A struck B, thereby giving him a mortal wound, of which he died, be only an argument that A killed B, it is certainly an infallible argument. The defectiveness, if any, of such a pleading is not in the matter pleaded, but in the manner of pleading it. The point of the objection is that the indictment is not direct—not that the facts stated do not constitute a public offense. Therefore, although not direct, but only argumentative, the indictment is aided on general demurrer. Stats. 1861, 465, Secs. 286–287; Gould's Pleadings, Ch. 3, Secs. 28–30.

Nothing is gained, however, by a departure from approved precedents and forms. In this case, for instance, days of labor spent in investigating and arguing the sufficiency of the indictment would

have been saved by the insertion of the usual and formal allegation of an assault in lieu of the words italicized, and the addition of the clause " and so the jurors aforesaid, etc., do say that the said Daniel E. Harkin him, the said William Hardwick, in manner and form aforesaid, feloniously, willfully, unlawfully and of his malice aforethought, did kill and murder, etc.,"—annexing (either expressly or by proper copulatives) the epithets unlawfully, with malice aforethought, etc., to every act set forth as a constituent of the offense.

The judgment and the order refusing a new trial are reversed, and the cause remanded for a new trial.

By WHITMAN, J.:

I concur in the judgment upon the reasoning of Justice Garber. Upon the other point discussed, I express no opinion.