The State v. Sheldon.

---

## THE STATE v. NORMAN SHELDON.

On an appeal by one found guilty of uttering a counterfeit bank-bill, taken from a judgment refusing a new trial, asked for on the ground that there was no legal evidence to show that the prisoner had any knowledge of the character of the bank-bill upon which the indictment was framed, the verdict of the jury will be considered conclusive as to the sufficiency of the proof. *Per Curiam:* This court cannot inquire into the correctness of the verdict on this point. The *scienter* was a matter of fact for the jury to find.

As a general principle, an indictment for forgery or counterfeiting, or uttering forged or counterfeited bills, must contain an exact copy or recital of the bill, where the prosecuting attorney attempts to set it out by its tenor; but where, from the difficulty of ascertaining a particular word, the prosecuting attorney attempted to make a *fac-simile* of it, the indictment will be good.

In an indictment for uttering a forged bank-bill, though the prosecuting officer attempt to set it out by its tenor, he is not bound to set forth words written in the margin of the bill; and where, in attempting to do so, the indictment recites that the bill contained the words *cinquante piastres* on the right hand of the vignette, while it actually contained the words *cinquante gourdes,* the statement will be regarded as surplusage, and the variation as immaterial. *Per Curiam:* In in-

The State v. Sheldon.

dictments for forgery it is unnecessary to set forth the ornamental parts of the bill, as the devices, mottoes, &c.

APPEAL from the Criminal Court of the First District, *Canonge*, J.

*Dufour*, District Attorney, for the State.

*Sever*, for the appellant.

JOHNSON, J. On the 14th of December, 1843, the defendant was tried and convicted in the Criminal Court of the First District, for uttering a false, forged and counterfeit bank-bill, which purported to have been issued by the Louisiana State Bank. Soon after, his counsel filed grounds for a new trial, and subsequently moved in arrest of judgment; both motions failed, and this appeal has been brought.

We omit the consideration of the first specification for a new trial, as, if good, it presents matter that properly belongs to a motion in arrest of judgment, and which, indeed, forms the *gravamen* of the motion, awaiting, in order, our attention. As to the second specification for a new trial, " that the verdict of the jury is contrary to evidence, inasmuch as the proof on behalf of the State failed to establish the *scienter*, there being no legal evidence to show that the defendant had any knowledge of the character of the bank-bill upon which the indictment was framed, and, therefore, the material allegations of the guilty knowledge of the defendant not having been legally made out by the proof," they may be easily and summarily disposed of. There is no power in this court, to inquire into the correctness of the verdict on this point. The *scienter* was a matter of fact for the jury to investigate and find; and the verdict of guilty, rendered in the case, is an affirmance, not to be doubted here, that the proof was amply sufficient. Had the question been, whether the evil intent must be proved by evidence extrinsic of the utterance of the bill, we might, on an assignment of errors, have looked into the judge's exposition. But as no bill of exceptions presents this or any kindred point, we have no hesitation in saying, that the refusal of a new trial was right. We therefore pass to the assignment of errors in arrest of judgment. The first is; " That the indictment, upon which the conviction of the defendant was had, sets forth that said defendant uttered, &c., on a certain day, &c., a counterfeit bank-bill of the denomination, &c., purporting to be a bank-bill issued by the Louisiana State Bank, &c., in the words following, to wit; 'Pay to, &c., bearer ON demand,' &c., under which indictment the public prosecutor was, by law, bound to prove on the trial of said cause, the said instrument or bank-bill to be *in hæc verba*, as laid in said indictment, or to prove by said instrument that it contained the words *verbatim*, as in said indictment set forth. Whereas the said instrument, or alleged

counterfeit bank-bill, contains the words 'pay to, &c., bearer *or* demand,' instead of '*on* demand,' which variation or substitution of the word *on* for the word *or* in the instrument, vitiates the indictment, and renders it bad in law, and the verdict of conviction of said defendant rendered by the jury, contrary to law and erroneous; wherefore, no judgment can legally or ought to be pronounced on the said verdict; but, on the contrary, the proceedings in the premises and said judgment ought to be arrested, and said indictment quashed."

We fully acknowledge, as a general principle, the rule which, in indictments for forgery or counterfeiting, requires an exact copy or recital of the bill or note, when the prosecuting officer assumes to set it out by its tenor, or, as in the case at bar, "as follows, to wit;" and we approve of the reasons which the authors on criminal law give for such scrupulous nicety, that the court may see that the bill or note averred to be forged or counterfeit, is one of those instruments, the false making of which the law considers forgery or counterfeiting, as the case may be; and also that the defendant may know the general nature of the crime of which he has been accused. Chitty's Crim. Law. But while we admit the law, with its reasons, to be as stated, we have not the least desire to strengthen the rule by an unlimited application of it. The original indictment, with the counterfeit bill annexed, has been brought up; and we have given to them, in the parts alleged to be discrepant, a critical examination. From this examination it is manifest, that the district attorney, foreseeing the objection which would be opposed in the event of a conviction, to pronouncing the sentence of the law, attempted, in the indictment, to make a *fac-simile* of the word in the counterfeit bill which he found difficult to recognize as either an *or* or an *on;* and we think his execution of that attempt is marked by quite as much precision and nicety, as, in the novelty of the dilemma in which he was placed, was necessary. This is clearly not a case of the negligent omission of a word, nor of the substitution of a word different from that which the character of the indictment demanded. But we think it a case in which the alternative of attempting a *fac-simile* of the questionable word, was legitimately adopted by the prosecuting officer; and that to deny this right in such a case, would be to declare the artifices of the forger and the counterfeiter paramount to all law. With this view, then, of the first ground taken in arrest of judgment, we pass to the sesond specification, which is as follows, to wit; "That said indictment further sets forth, that said instrument contains the words '*cinquante piastres*,' on the right hand of the vignette, across the face thereof, whereas, and instead thereof, said instrument or bill contains in said place '*cinquante gourdes*,' which

variation or substitution of said words ' *cinquante piastres*' in the indictment, for the words ' *cinquante gourdes*' in the said instrument is fatal, and renders said indictment bad in law, and said verdict contrary to law." In the objection thus taken, the facts are truly stated as the record presents them. But in an indictment for forgery it is unnecessary to set forth the ornamental parts of a bill, as the devices, mottoes, &c. 2 Binney's Rep. 332. The prosecuting officer, in the case under review, was not bound by the rule of an exact recital, to notice the words " *cinquante piastres*" in the margin of the bill ; and if, in an attempt to give any of the ornamental parts of a bill, he fail, it will be regarded as surplusage, which cannot vitiate.

*Judgment affirmed.*