(36 South. 396.)

No. 14,890.

STATE v. HAUSER.*

(March 14, 1904.)

CRIMINAL LAW—OBJECTIONS TO EVIDENCE—ACCOMPLICES—INSTRUCTIONS—BILL OF EXCEPTIONS—INDICTMENT—NEW TRIAL — APPEAL— REVIEW—PUBLISHING FALSE ORDER—ARREST OF JUDGMENT.

1. The district attorney has never been required, in Louisiana, before offering the testimony of an accomplice, to seek and obtain permission from the court to do so. If counsel had the right to raise objections on that subject, they should have done so before, and not after, the testimony was taken. They cannot, on motion, have the testimony expunged. The taking of the testimony in the court's presence, without objection, evidenced its consent.

2. The court correctly refused to instruct the jury that, "while a conviction might be had on the uncorroborated testimony of an accomplice, it was admonished it would be 'unsafe' to do so." The court's charge, as given, was correct and sufficient.

3. The court should not sign bills of exception after an appeal has been taken. It was not authorized to allow them to be presented and signed nunc pro tunc.

4. Attacks on bills of indictment should be urged either by demurrer, motion to quash, or

in arrest of judgment, and not in motions for a new trial.

5. The court cannot be called on, for the purposes of an appeal, to review on motion for a new trial the rulings made by it in the course of the trial. , Bills of exception should have been taken at that time to the rulings, and their correctness must be considered by the Supreme Court on those bills. Objections not made at the time will not be considered.

6. On application for a new trial on the ground that the verdict of the jury was contrary to the law and the evidence, or that the allegata and probata did not correspond. counsel for the defense are not authorized to have filed the testimony submitted to the jury, and on which it acted, nor a statement of facts, and, on the refusal of the application, take a bill of exceptions, and make the statements of fact, or such testimony, a part of the bill. The Supreme Court will disregard the same, and not review the action of the court. The district court has the right, on motion for a new trial, to set aside the verdict of the jury, if, in its opinion, it is contrary to the law and the evidence; but the Supreme Court has no such right. It has the right to decide, when the matter is properly presented to it, whether certain evidence which was admitted was legally admissible, or whether certain admissible evidence was improperly refused; but it cannot pass upon the legal effect of the evidence after it went to the jury.

7. The doctrine of aider by verdict is recognized in Louisiana.

8. Where a party is charged with feloniously publishing a certain false order for the payment of money, it is proper for the court to submit it to the jury, to be passed upon subject to subsequent instructions from it.

9. It is not necessary, for the purposes of a prosecution under section 833 of the Revised Statutes of 1876, that the order for the payment of money should be full and complete on its face. It is sufficient if it be shown to have been such by the known and accustomed dealings between the parties.

10. The recital in the indictment that the party accused was assisted by another person in making the instrument declared on, which "became an order for the payment of money," does not have the effect of relieving the party accused from being held liable as a principal, if, after it has been so made, he has published it as true. It was not necessary to have charged in the indictment that the party upon whom the false order for the payment of money was drawn was in fact indebted in any amount to the party drawing it or any other person, or that there was any legal obligation to pay.

11. A bill of indictment which charged the accused with having "made" a "false" bill or "order for the payment of money," with intent to cheat and defraud, and that he feloniously published this false bill as true, sufficiently charged

*Rehearing denied April 11, 1904.

a scienter on the part of the accused to withstand an attack made in a motion in arrest of judgment upon the indictment for want of a recital of knowledge.

Breaux, J., dissenting.

(Syllabus by the Court.)

Appeal from Criminal District Court, Parish of Orleans; Joshua G. Baker, Judge.

Andrew Hauser was convicted of forgery, and appeals. Affirmed.

Adams & Otero, Robert John Maloney, and Thomas Joseph Duggan, for appellant. Walter Guion, Atty. Gen., and Chandler Clement Luzenberg, Dist. Atty., for the State.

### Statement of the Case.

NICHOLLS, C. J. Defendant was prosecuted under an indictment on three counts, which charged, first, conspiracy to commit forgery; second, forgery; third, publishing as true a false, forged instrument.

On trial he was acquitted on the first two counts and found guilty as charged on the third.

He was sentenced to suffer imprisonment in the state penitentiary at hard labor for two years, and he appealed.

The third count was as follows:

"And the grand jurors of the state of Louisiana, duly impaneled and sworn in and for the body of the parish of Orleans, in the name and by the authority of the said state, upon their oath further present: That one Andrew Hauser, late of the parish of Orleans, on the tenth day of February, in the year of our Lord one thousand nine hundred and two, with force and arms, in the parish of Orleans aforesaid, and within the jurisdiction of the criminal district court for the parish of Orleans, feloniously did publish as true a certain false, forged, and counterfeited order for the payment of money, known as the bill for telegraphic services of the Western Union Telegraph Company, a corporation having a domicile and doing business in the said parish of Orleans, against the Fruit Dispatch Company, also a corporation having a domicile and doing business in the said .parish of Orleans, and which said bill is dated New Orleans, February tenth, one thousand nine hundred and two, and contains and is a descriptive list of telegrams represented to have been sent and received by the said Western Union Telegraph Company, for and on account of the said Fruit Dispatch Company, on the seventh, eighth, ninth, and tenth days of February, one thousand nine hundred and two, and the charges due therefor, and which said bill, when signed and certified as correct by one Clarence Rein, then and there a clerk and employé of the said Fruit Dispatch Company, became and was an order for and upon the said Fruit Dispatch Company to pay to the Western Union Telegraph Company the total amount of money so represented to be due on and by the said bill, and which said bill was, on the tenth day of February, one thousand nine hundred and two, feloniously and fraudulently signed and certified to as correct by the said Clarence Rein, then and there acting as a confederate, and at the instigation of the said Andrew Hauser, the said bill having been falsely made by the said Andrew Hauser, with intent to cheat and defraud, contrary to the form of the statute of the state of Louisiana in such case made and provided, and against the peace and dignity of the same."

Motions for a new trial and in arrest were filed on behalf of defendant and overruled. The grounds assigned for a new trial were:

First. In the third count of the indictment it is sought to charge the said Andrew Hauser, as principal, with having feloniously published as true a certain statement of the claim for tolls of the Western Union Telegraph Company against the Fruit Dispatch Company, described as an "order for the payment of money," but—

(a) It is not set out in the indictment, as required by section 833 of the Revised Statutes of the state for 1876, that Hauser pub-

lished as true an "order for the payment of money" knowing the same to be false, altered, forged, or counterfeited, or that he did so with intent to injure or defraud.

(b) It is not alleged that the statement described in the indictment was published as true by the said Hauser after it had become, as averred, an "order for the payment of money," by having been signed and certified as correct by Clarence Rein; nor is it averred that after such certification it was published as true by the said Rein, or any other person in collusion with Hauser, either while the latter was present or during his absence; nor was proof thereof made at the trial.

(c) It is not averred in the indictment that the Fruit Dispatch Company was at all indebted to the Western Union Telegraph Company, or to Hauser or Rein, or any other person or corporation, in any amount, or that there was the least obligation on the part of the said Fruit Dispatch Company to pay any sum whatever; nor was proof thereof made at the trial.

(d) Even if, as averred in said indictment, Clarence Rein on the 10th of February, 1902, signed and certified the statement alleged to have been published as true, and did this at the instigation of Hauser, still, since it is not charged, nor was it shown at the trial, that Hauser was present during the time, at the end of February, when the said statement so signed and certified by Rein was presented to H. L. Mitchell, cashier at New Orleans for the Fruit Dispatch Company, therefore the said Hauser could not be legally convicted on the third count of said indictment as a principal.

(e) The evidence in the case, without exception, all tends to prove that the only paper "published" by Hauser was the statement referred to in the indictment before it had received the signature and certification of Rein, which, it is averred, converted it into an "order for the payment of money,"

and that at the time it was so "published" to Rein no crime could have been committed which is set out in the pending prosecution, for the reason that delivery to a confederate is not in law the publishing as true of a false instrument, and because, further, even the actual publication of an instrument which it is conceded had not yet acquired the character and purport of an order for the payment of money was not triable under the indictment.

(f) The said Hauser by the verdict of the jury was adjudged to have neither conspired, combined, agreed, nor confederated with the said Rein to forge the statement hereinbefore described into "an order for the payment of money," nor in collusion with the said Rein committed the forgery itself. This being so, it was impossible for Hauser to have been guilty of knowingly publishing the order as true, with intent to injure or defraud.

Second. The said verdict is in point of law against the charge of the court, in that the proof by which it was sought to support the averment that the statement alleged to have been falsely made and published as true by the said Hauser, containing a descriptive list of telegrams represented to have been sent and received by the Western Union Telegraph Company for and on account of the Fruit Dispatch Company, when signed and certified as correct by the said Clarence Rein, became and was an order on the said Fruit Dispatch Company to pay to the said Western Union Telegraph Company the total amount of money so represented to be due on and by the said bill, established that the said certification and indorsement of correctness alleged to have been thus made by the said Clarence Rein did not render it the duty of the Fruit Dispatch Company to pay the claim; for, according to the evidence heard, not only was the said signature and certification on the said statement insufficient in fact, but it was, moreover, indispensably necessary that a voucher for the amount of

the claim, signed by H. L. Mitchell, cashier at New Orleans of the said Fruit Dispatch Company, should be forwarded, together with the statement, to the New York office, and, unless such voucher accompanied the statement, no payment would have been made.

A verdict of "guilty on the third count," under the testimony elicited upon this point, was, therefore, in utter and flagrant disregard of the specific instruction delivered by the court, at the instance of the jury, upon their return to be further charged, which was in these words: "If by presentation of this account, certified to be correct, it became the duty of the Fruit Dispatch Company to pay that bill, and that indorsement proved the correctness, it might be regarded as an order for the payment of money. If that was not sufficient, but it was necessary to have a voucher, then it would not be an order for the payment of money."

Third. The statement, which is alleged in the indictment to have become and been an order for the payment of money when signed and certified as correct by the said Rein, was shown by the production of the statement itself to be simply paraphed "O. K.," and there is no averment, as in law there must be, setting out that the letters "O. K.," on the said statement, over the signature of the said Rein, implied that he certified the same to be correct.

Fourth. The specific complaint in respect to the forgery is substantially that Hauser, as the collector of the Western Union Telegraph Company, entered false charges against the Fruit Dispatch Company, in a certain statement which it was his duty to make, thus creating an original record which is not true, and that in the same way Rein made an original entry, over his own signature, certifying to the correctness of the account. To do this is not forgery, and, where there is no forgery, there can be no publishing of a forgery as true.

Fifth. When, during the course of the trial, objection was interposed on behalf of defendant to the introduction in evidence of the statement described in the indictment, and heretofore referred to herein, for the reason that the same was not an "order for the payment of money," and because, further, the original record created by Hauser in the confection of said statement did not constitute an instrument which could be made the subject of forgery otherwise than by altering the same, the court took the matter under advisement, and promised to pass upon the issues raised at some later period. No ruling, however, was subsequently pronounced, and in consequence the defendant has been denied the right to reserve his bill of exceptions to what was in effect an adverse judgment, since the papers objected to were permitted to be inspected by the jury, subject to the action proposed to be, but never in fact, taken by the court.

Sixth. The court erroneously, as defendant is advised and believes, departed from the recognized practice under our system of jurisprudence, by refusing to instruct the jury that, while a conviction may be had on the uncorroborated testimony of an accomplice, yet the jury should be admonished of the danger of, and advised against, such conviction.

A bill of exception was taken to the refusal of the court to grant a new trial.

The grounds urged in arrest of judgment were as follows:

First. It is not alleged that Andrew Hauser published as true a false, forged, and counterfeited order for the payment of money, "knowing the same to be false, forged, and counterfeited," or that he did so "with intent to cheat and defraud."

Second. It is not alleged that the statement prepared by Hauser was published by him as true, after it had become, through the certification of Rein, "an order for the payment of money."

A bill for telegraphic services is not included within the operation of the statute under which the indictment was framed.

Third. It is not averred in the indictment that the Fruit Dispatch Company was at all indebted to the Western Union Telegraph Company, or to Hauser or Rein, or any other person or corporation, in any amount, or that there was the least obligation on the part of the said Fruit Dispatch Company to pay any sum whatever.

Fourth. Even if, as averred in the indictment, on the 10th of February, 1902, Rein signed and certified the statement alleged to have been published to him by Hauser as true, and by such certification converted it into "an order for the payment of money," yet, since it is not charged that Hauser was present, either when the certificate of correctness was attached to the statement or when Rein handed the same to the Fruit Dispatch Company's cashier, therefore Hauser was not indicted and could not legally be convicted as a principal under the allegations of the third count of the indictment.

Fifth. The indictment charges that the only paper "published" by Hauser was the statement set out therein by its purport, and that this was before it received the certification and signature of Rein, which, it is averred, converted it into "an order for the payment of money," from which it results that, at the time it was so "published" to Rein, no crime could have been committed which is set out in the pending prosecution, for the reason (1) that a delivery to a confederate is not in law publishing as true, and because, moreover, (2) even the representation of the genuineness of a statement, which it is conceded in the indictment itself had not yet acquired the character and efficacy of an "order for the payment of money," would not constitute an offense under the third count of the indictment.

Sixth. In respect to the forged instrument alleged to have been published as true, the recital in the indictment is substantially that Hauser entered false charges against the Fruit Dispatch Company for tolls which it was his duty to make, thus creating an original record which is not true, and that in the same way Rein made an original "O. K." entry over his own signature, which it was claimed certified the charges as correct. To do this was not to perpetrate a forgery, and, where there is no forgery, necessarily there can be no publishing of the forgery as true, and by reason thereof no judgment against him, the said Andrew Hauser, can lawfully be rendered on said record.

Several bills of exception were taken.

The first bill recites that during the cross-examination of Clarence Rein (a state witness, who, according to his own testimony, as well as the specific averments of the indictment, was the accomplice of the defendant in the commission of each of the crimes charged), it having developed from the statement of the trial judge, in answer to an inquiry propounded by counsel for the accused, that no application had been made by the district attorney to the court requesting that the said Rein be allowed to appear as a witness for the prosecution, it was thereupon formally moved on behalf of defendant that the testimony of the said Rein be excluded, as inadmissible, in the absence of such application made or leave granted.

The court overruled the objection and defendant excepted.

The second bill recites that, the district judge having instructed the jury as to the law applicable to the case, defendant requested the court to further instruct them that, "while a conviction may be had on the uncorroborated testimony of an accomplice, yet the jury should be and was admonished that it would be unsafe to do so"; that, the district judge having declined to substantially give the instruction, the defendant excepted, and attached to his bill, as part of the same, all the instructions given by the court.

The judge, in his addendum to this bill, said: "The charge given and taken down by the stenographer I believe is a correct statement in regard to the testimony of an accomplice, and, taken in connection with what was also charged on this subject at the request of counsel for the defendant, placed the jury in a position to weigh and properly appreciate this testimony. The charge, while not written, was taken down by the stenographer, and speaks for itself."

The fourth bill, after stating the grounds set up in the application for a new trial, recites that, the motion coming on to be tried before argument, it having been admitted "that the only evidence as to what was required in order to induce payment by the New York branch is contained in the testimony of H. L. Mitchell," counsel for defendant, with leave of the court, offered in evidence the testimony of the said Mitchell and the instructions given to the jury by the court, particularly that portion contained in the original charge, which is of the tenor following:

"You are to say whether that document or account which has been submitted to you, under the evidence, is an 'order for the payment of money.' If you find, from the evidence you have heard, that the order, when presented to the Fruit Dispatch Company, was so regarded, and was as a fact, when presented, considered by them as an 'order for the payment of money' shown to be due by the Fruit Dispatch Company to the Western Union Telegraph Company, and so regarded by the Fruit Dispatch Company, it will be your duty to find that it was an 'order for the payment of money.' On the other hand, if you find that this account, or statement, which the indictment charges to have been 'O. K.'d' and signed by Clarence Rein, was simply an account of indebtedness due by the Fruit Dispatch Company for tolls, and was not in any sense an 'order for the pay-

ment of money,' but simply an account, it will be your duty to find that it was not an 'order for the payment of money,' and bring in a verdict of 'not guilty.' If you find that it was simply an account from the telegraph company of the indebtedness of the Fruit Dispatch Company, and that it required something more on the part of some officer than the 'O. K.' and signature of Rein, then Rein's simple 'O. K.' would not make it an 'order for the payment of money.'"

And also the instruction given specially, at the request of the jury to be further charged, which is in these words:

"The court instructs you that there are two classes of orders for the payment of money—one class, which on its face would be an order for the payment of money; the other on its face would not be an order for the payment of money, yet under certain circumstances would be.

"If by presentation of this account, certified to be correct, it became the duty of the Fruit Dispatch Company to pay that bill, and that indorsement proved the correctness, it might be regarded as an order for the payment of money. If that was not sufficient, but it was necessary to have a voucher, and the company in New York would not pay it without this voucher, then it would not be an 'order for the payment of money.'"

Subsequently, also, with leave of the court, all of the testimony heard at the trial of the motion was offered in support of the various grounds of the motion for a new trial and of the bill of exceptions reserved to the overruling of the same.

The argument of counsel having been heard on the said application for a new trial, and the presiding judge of the court having refused the same, the said Andrew Hauser by his counsel did then and there in the presence of the court reserve his bill of exceptions to the refusal of the aforesaid motion for a new trial, and now prays that

the same as herein tendered be allowed and in due form signed and sealed by the said presiding judge.

The judge made the following statement on this bill:

"The evidence established beyond any doubt the guilt of the accused, and the only question in the case, it seems to me, is whether or not the account set out in the information as an order for the payment of money has been shown to be such by the evidence.

"It is true, as stated in the motion, that I instructed the jury, at the request of the counsel for defendant, that if, besides the list described in the indictment and 'O. K.'d' and signed by Rein, it required anything else to secure payment, then it was not an order for the payment of money. When this instruction was given, I felt confident of its correctness; but further study and reflection has caused me to doubt its entire correctness as a legal proposition. There are many examples of orders for the payment of money requiring two signatures, and without both of which they should not be paid, yet it is frequently the case that they are paid when they contain only one signature, and I imagine that in such a case there would be no doubt that, though the order was imperfect, if used to obtain money, it would be classed as an order for the payment of money. So in this case I hardly think that the fact that the attested bill would not have been paid without Mitchell's voucher of itself prevents it from being an order for the payment of money, provided the jury were satisfied from the evidence that in the transactions between the Western Union Telegraph Company and the Fruit Dispatch Company it was so regarded.

"Counsel for the state, as well as for the defendant, have respectively prepared and submitted separate statements of facts bearing on the question, and setting out an abstract of the evidence as viewed from con-

flicting standpoints. Each is correct in substance, although worded so as best to support the theory advanced by its framer; but, taken together, they contain the substance of the entire testimony and are incorporated into the record as an agreed statement of facts. The court unintentionally neglected to rule on defendant's objection to the introduction of the evidence for the alleged reason that the document described in the indictment was not an order for the payment of money; but I do not think that defendant has been in any way prejudiced by this omission, as the jury were the ones to decide, from the evidence heard by them, whether the instrument described in the indictment was or was not an order for the payment of money."

The fifth bill recites that in the course of the same proceedings, in considering the matters alleged in the second, fourth, and fifth specifications of the motion for a new trial, the trial judge conceded the truth of the recitals of fact therein contained, and certifies that at the before-recited trial of the said Hauser on the said indictment, and while one Clarence Rein, a witness for the state, was being examined in chief, the three bills for telegraphic service (which it is alleged in the indictment became and were orders for the payment of money, when certified as correct by the said Rein) having been offered in evidence, the defendant by his counsel objected to the admissibility thereof, because (a) none of the bills is on its face an order for the payment of money, nor is there any averment in the indictment of extrinsic facts sufficient to constitute it an order for the payment of money; (b) these accounts, made out by defendant in the ordinary course of business, are what they pretend to be—statements of the account of the Fruit Dispatch Company with the Western Union Telegraph Company, and, whether false or not, are not forgeries.

The presiding judge also certifies that when the objection was urged the trial court ad-

mitted these accounts in evidence, subject to the force of the objections interposed, and promised "to pass upon the question later," but omitted to do so, by which omission the defendant unintentionally was deprived of all opportunity to formally reserve a bill of exceptions to the action of the court in permitting the accounts to be offered in evidence and exhibited to the jury.

Under the circumstances, defendant, at this first opportunity having called the matter to the attention of the trial judge, now proposes to treat the exception as reserved, and accordingly prays that the same, as herein tendered, be allowed and in due form signed and sealed by the said trial judge.

The judge signed the bill, stating: "The reasons attached to bill No. 3, and the two statements of fact annexed and made part of the bill, apply equally to this bill."

We find in the transcript two statements of facts, one prepared by the district attorney, and the other by defendant's counsel; also, the following motion filed by the district attorney:

"On motion of J. Ward Gurley, district attorney for the parish of Orleans, and upon suggesting to the court that, while it is admitted that the statement of facts filed on behalf of defendant is correct as to the facts therein set forth, yet the district attorney contends that the conclusions and deductions therein contained are not correct, and are not sustained by the evidence in the case, considered as a whole; and especially does the district attorney object to and deny the correctness of the following of said conclusions and deductions, viz.:

"(1) That the custom relative to the handling of the accounts of the Fruit Dispatch Company was 'established at the suggestion of the cashier of the New Orleans branch of the Fruit Dispatch Company.'

"(2) The conclusion set forth as follows, viz.: 'The only paper offered, delivered, or in any sense published by Hauser was the statement or account before it was O. K.'d by Rein.'

"(3) The following statement and conclusion, viz.: 'When the paper was thus passed or published as true to Mitchell by Rein, Hauser was neither actually present nor near enough to be of assistance to Rein in publishing the O. K.'d statement, had his aid been serviceable; nor was he connected with the act of Rein in any sense, unless, conspiracy having been established, the acts of Rein in carrying out the common design became the acts of Hauser.'

"And upon further suggesting to the court that the district attorney believes a more complete statement of the facts should be made part of the record,

"It is ordered that the following statement of facts, filed herein on behalf of the state, be made part of the record, and that the testimony referred to in said statement be also made part of the record, viz., the testimony of the witnesses Terhune, Rein, Perry, Adam, and Mitchell."

### Opinion.

Defendant in this suit was sentenced on the 15th day of May, 1903, and on the same day he was granted a suspensive appeal. We find copied in the transcript an extract from the minutes of the district court, May 25th, under the heading of "State of Louisiana v. Andrew Hauser," which recites that Messrs. Adams & Otero "presented to the court a general bill of exceptions, also a statement of facts; that the court ordered said bill of exceptions and statement of facts filed nunc pro tunc as of date May 15, 1903."

We understand from this that the papers were presented and signed by the judge as of that date. If so, it was too late. Bills of exception should be presented and signed before appeal. The court is without authority to sign them later nunc pro tunc. As the questions presented in the bills are important, and the conclusions which we reach up-

on them do not carry with them a setting aside of the verdict and reversal of the judgment, we will notice and dispose of them; but our action in this matter must not be taken as a precedent.

The first ground upon which defendant seeks a reversal is the refusal by the district judge of his application to exclude the testimony of Clarence Rein as having been inadmissible, in the absence of a prior application by the district attorney to the court for its leave to have said testimony taken, and the granting of said leave. It is claimed that under the English practice such prior application and leave were required, and the courts of this state are required to conform to that practice. It has never been the practice in Louisiana to ask for and obtain such consent. If such consent was needed, the fact that the testimony was taken in the presence of the court, without its objection, would of itself evidence consent. Were it admissible for the accused himself to raise such an objection, it should have been urged before the testimony was taken, and not reserved to be made until his cross-examination of the witness, and then under a prayer to have the testimony which had already been taken excluded.

Defendant complains of the refusal of the district judge to instruct the jury specially at his request that, "while a conviction might be had on the uncontradicted testimony of an accomplice, yet it was admonished that it would be unsafe to do so." The ruling of the court was correct. It was no part of the court's duty, and in fact it would have been reprehensible in the judge, to have expressed his opinion that it would be "unsafe" for the jury to act on such testimony. It was for the jury itself to determine whether it would be safe or not, under the evidence adduced, to return a verdict of guilty. The court had charged the jury as follows: "It is not the rule of law, but it is rather the result of our experience in dealing with that class of testimony, that, while you may convict upon the uncorroborated testimony of an accomplice, still you should act upon his testimony with great caution, subject it to a careful examination in the light of the other evidence in the case, and you are not to convict upon such testimony alone, unless satisfied after a careful examination of its truth, and also that you can safely rely on it. If that testimony is corroborated, and it satisfies you beyond a reasonable doubt of defendant's guilt, it is your duty to convict. If you find, from all the other evidence, that the charge brought by the state is made out, it is your duty to say so by a verdict of guilty. It is your duty to bring in a verdict of guilty, if you feel that you can rely upon the testimony of that witness, even if not corroborated, if you are satisfied beyond a reasonable doubt of the truth of the charge."

After this charge had been given, counsel of accused requested the special charge referred to be given. In reply the court said "it declined to advise the jury further in regard to the weight to be attached to the testimony of an accomplice than it had already done," but adding: "The court charges that you must weigh the testimony with caution, and consider the circumstances under which an accomplice testifies, and that they should only convict when they are thoroughly satisfied beyond a reasonable doubt of the truth of his testimony, but notwithstanding the fact that he is an accomplice, they can find a verdict of guilty."

We think the court's instructions on the subject were as full and correct and explicit as necessary.

We are of the opinion that the defendant was not warranted, for the purposes of an appeal to this court, to urge as grounds for a new trial those assigned by him in his motion for a new trial.

No demurrer nor motion to quash the indictment had been filed by the accused. He pleaded to the indictment as constructed, per-

mitted it to be read to the jury, and to be acted upon as correct in every way.

In State v. Taylor, 37 La. Ann. 40, this court said:

"Defendant's complaint, embodied in a bill of exceptions, is leveled at the judge's refusal of a new trial. The grounds of his motion were as follows:

"(1) That the indictment was defective for the reason that it failed to set forth * * *.

"(2) That the evidence failed to show that * * *, and that the circumstances making up the only evidence in the case were not sufficiently strong to justify a conviction.

"His first ground, which is an objection to the indictment, even if correct, cannot be presented in the shape of a motion for a new trial. If it be an error of form, it should have been met by a motion to quash the indictment; if an error of substance, it should have been urged by a motion in arrest of judgment. Under elementary rules of criminal practice, both in this and our sister states of the Union, a new trial cannot be granted on such a ground.

"Counsel for the defendant has not been more fortunate in his method of presenting the second ground of his complaint. In urging that ground in the shape in which he presents it, he has entirely lost sight of the restricted character of our jurisdiction in criminal cases. The Constitution has interposed an impassable barrier to any attempt on our part to review the verdict of the jury on questions of fact. Article 81 has limited our jurisdiction in such cases to questions of law. The substantive meaning of the complaint is that the jury convicted accused on insufficient evidence. The jury were the sole judges of the question whether the proof showed that the deed was committed in the nighttime, or whether the building was appurtenant to a dwelling house, under the meaning of the statute, or whether the circumstantial evidence introduced and relied on by the state was sufficient to convict.

Had the accused asked the court to charge the jury that the elements which he set forth were essential to a conviction of burglary under the section which was the legal basis of the prosecution, and had the judge declined to give such instruction, a bill taken from the judge's refusal would have presented a question of law subject to our review. But an attempt on our part to judicially entertain the merits of the motion for a new trial made by the defendant on the grounds therein set forth would involve us in a flagrant usurpation of jurisdiction. Such a power is not conferred, but is industriously withheld, by the Constitution.

"Conceding, for the sake of argument, that the jury made erroneous findings on all the points suggested by the accused, we are powerless to review their conclusions, because such a course would be 'trying the case over again on the facts.' State v. Polite, 33 La. Ann. 1016."

What is said in that case as to "insufficiency" of evidence is equally applicable to variance in the evidence, or want of correspondence between the allegata and probata. Bishop, New Criminal Procedure, § 460; State v. Frey, 35 La. Ann. 106. Also to objections raised as to the instructions given or refused to be given on the trial. The time and place for, and the method of presenting, objections of that kind are fixed by practice, and the legal and proper prosecution of criminal cases requires that they should be conformed to. The judge could not be called on, on application for a new trial, to review the rulings made by him during the trial (State v. Kervin, 37 La. Ann. 782; State v. Lewis, 41 La. Ann. 590, 6 South. 536), nor to pass upon objections not urged at that time (State v. West, 45 La. Ann. 928, 13 South. 173; State v. Hobgood, 46 La. Ann. 855, 15 South. 406).

In State v. Sweeney, 37 La. Ann. 2, this court used the following language:

"The motion [for a new trial] is based on

six grounds, four of which attack the verdict of the jury and relate to matters of fact which were exclusively within the province of that body, with whose action this court has no power to interfere. If it were true, as charged, that the jury disregarded the testimony of unimpeached witnesses and the charge of the court, and did not give the accused the benefit of any reasonable doubt, the defendant, on satisfying the district judge, would have been allowed a new trial. It seems, on the contrary, that, although his complaint was urged by able counsel, he failed to convince the judge that the jury had not done him justice. The district judge could have granted a new trial if the verdict was contrary to the evidence, for he has authority to consider the verdict and review the facts to test its correctness. Although he cannot comment upon the facts before the jury prior to verdict, still he has the right after verdict to decide whether the facts proved justified, or not, the verdict, and accordingly to refuse or grant a new trial. Where he refuses such motion, this court, in the exercise of its appellate jurisdiction, is powerless to grant any relief from the effect of such ruling, even if the same be erroneous.

"The constitutional prohibition lies to the exercise of the jurisdiction of this court to find questions of fact which were submitted to and found by the jury. As this court was never designed to pass upon questions of fact, as a jury is called upon to do—in other words, to pass upon the guilt or innocence of the accused—it cannot under any circumstances review the verdict of a jury touching such guilt or innocence. This court has already (State v. Polite, 33 La. Ann. 1016) so held. To say that the district judge erred in overruling the motion for a new trial would actually be sitting on the case as the jury has done, taking cognizance of the facts proved on the trial—acquit or convict, which cannot be done. * * * The sixth ground is that the district judge erred in charging the jury as he did. If the charge be, as claimed, insufficient or erroneous, it should have been objected to when given. This the accused did not do. It seems to have been complained of for the first time only in the motion for a new trial, which was too late."

What was said in that case as to the finality of the conclusions reached by the jury upon questions of fact applies also to the conclusions which the jury reached upon questions of law in determining its verdict as to the guilt or innocence of the accused. The jury in this state are judges of both the facts and the law. This court is authorized to pass upon questions involving the admissibility or nonadmissibility of evidence before the jury, if they are properly presented to it, but not upon the effect of the evidence when it has once reached the jury. It is authorized to say whether questions of law as submitted to the jury were correct or not, and whether correct questions of law, which the accused had the right to have had submitted to the jury, were improperly refused, or not; but, when the case once gets to the jury under legal conditions, we are powerless to review the correctness of its conclusions as to the blended questions of law and fact which were submitted to it. We cannot separate the one from the other.

Counsel for the state refer the court on these questions to State v. Sheldon, 8 Rob. 540; State v. Peterson, 2 La. Ann. 921; State v. Nelson, 3 La. Ann. 497; State v. Tucker, 10 La. Ann. 501; State v. Bass, 11 La. Ann. 478; State v. Brunetto, 13 La. Ann. 45; State v. Rolland, 14 La. Ann. 40; State v. Bunger, Id. 461; State v. Ward, 14 La. Ann. 673; State v. Hooten, 16 La. Ann. 308; State v. Curtis, 30 La. Ann. 814; State v. Swayze, Id. 1323; State v. Breckenridge, 33 La. Ann. 310; State v. Polite, Id. 1016; State v. O'Kean, 35 La. Ann. 901; State v. Bates, 38 La. Ann. 491; State v. Sweeney, 37 La. Ann. 2; State

v. Walker, Id. 560; State v. Smith, 38 La. Ann. 301; State v. Tanner, Id. 307; State v. Broussard, 39 La. Ann. 671, 2 South. 422; State v. Perkins, 40 La. Ann. 210, 3 South. 647; State v. Deschamps, 41 La. Ann. 1066, 7 South. 133; State v. Tranchan, 41 La. Ann. 619, 6 South. 328; State v. Nettles, 41 La. Ann. 323, 6 South. 562; State v. Cook, 42 La. Ann. 85, 7 South. 64; State v. McFarlain, 42 La. Ann. 803, 8 South. 600; State v. Ashworth, 43 La. Ann. 204, 8 South. 625; State v. Green, 43 La. Ann. 402, 9 South. 42; State v. Clifford, 45 La. Ann. 980, 13 South. 281; State v. Lee et al., 46 La. Ann. 627, 15 South. 159; State v. Barker, 46 La. Ann. 798, 15 South. 98; State v. Harris, 48 La. Ann. 1189, 20 South. 729; State v. Miller, 107 La. 796, 32 South. 191; State v. John, 109 La. 1088, 1089, 34 South. 98; State v. Corcoran, 50 La. Ann. 453, 23 South. 511; State v. Bailey, 50 La. Ann. 533, 23 South. 603; State v. Williams, 50 La. Ann. 1322, 24 South. 332; State v. Devine, 51 La. Ann. 1296, 26 South. 105.

Counsel urge that the jury disregarded the charge of the judge. That may be; but, if so, the district judge in this case was evidently of the opinion finally that his views as given to the jury were wrong, and those reached by the latter were right. Otherwise, we assume, he would have granted a new trial. The district, not the Supreme, Court, was to deal with that. State v. White, 13 La. Ann. 573.

Defendant insists that the statements or bills upon which the prosecution was based should not have been submitted to the jury, as they showed on their face that they were not such as the indictment charged them to be; that the court promised to rule on that question, but did not do so, and they were deprived of the opportunity of reserving a bill to the action of the court in submitting them. The court evidently reached the conclusion that they were admissible. We think they were. The very question at issue was whether they had, or not, the character attributed to them. No objection of any kind had been raised as to the sufficiency of the indictment. The case was then before the jury. In order to pass upon the issues presented to it, it necessarily had to have placed before it the instruments upon which the prosecution was based. Had the court ruled out the evidence, it would have practically taken the case from the jury and decided it itself. We think the proper course to pursue was to allow the instruments to be admitted, subject to instructions to be given later by the court, either of its own motion or at the request of the defendant. The court subsequently instructed the jury as to these statements under a charge which defendant accepts as correct. Placing the defendant in the position he would have occupied had he reserved a bill and submitted it to us, we would have had to hold it not well founded. He has, therefore, no grounds for complaint. State v. Stephen, 45 La. Ann. 705, 12 South. 883; Gilmore v. H. W. Baker Co. (Wash.) 41 Pac. 124. Had the court failed to have given any instructions on the subject, or had those given been objectionable, defendant should have called its attention to the matter and asked for instructions. He should not have held in reserve the inaction of the court on the subject (had that been the situation), and made that inaction a ground for reversal.

We do not think the court should have allowed counsel to have filed statements of fact in the case. They were not admissible, in so far as matters were covered by the motion in arrest of judgment, and could not be utilized for the purpose, through appeal to this court, to have the verdict set aside and the judgment annulled. See State v. Fant, 2 La. Ann. 837, 838; State v. Nelson, 3 La. Ann. 500; State v. Crawford, 32 La. Ann. 526; State v. Tompkins, Id. 620; State v. Kervin, 37 La. Ann. 782; State v. Tanner,

38 La. Ann. 307; State v. Miller, 107 La. 796, 32 South. 191; State v. John, 109 La. 1088, 1089, 34 South. 98.

The decision of this case must rest upon the issues raised through the motion in arrest. The state invokes in support of the judgment appealed from the doctrine of "aider by verdict," and counsel quote from Stevens' work on the "Law of Criminal Procedure" (page 171) as follows: "In indictments for offenses at common law, when an averment is on the face of it imperfect, but is of such a nature that the verdict could not have been returned, unless evidence of the matter not averred had been given, the defect in the indictment is said to be cured by the verdict, and cannot be taken advantage of in arrest of judgment." They also quote Dr. Bishop (New Criminal Procedure, 707) as saying: "At common law the verdict cures some things, as to which the rule is the same in criminal causes as in civil. It is that, though a matter, either of form or of substance, is omitted from the allegation, or alleged imperfectly, yet if, under the pleadings, the proof of it was essential to the finding, it must be presumed, after the verdict, to have been proved, and the party cannot now for the first time object to what has wrought him no harm." They quote Grove, J., in Reg. v. Goldsmith, 12 Cox, 488, to the effect that "where a matter is so essentially necessary to be proved that, had it not been given in evidence, the jury could not have given such a verdict, the want of stating that matter in express terms in a declaration, provided it contain terms sufficiently general to comprehend it in fair and reasonable intendment, will be cured by the verdict."

They further quote from Wharton's Criminal Pleading and Practice, 760, as follows: "So is it with essential averments, of which the verdict implies the truth, but which are imperfectly stated." "There is a general rule as to pleading at common law, and I think it is right to say that there is no distinction between pleadings in civil and criminal proceedings," said Blackburn, J., in 1873, "and where an averment which is necessary to support a particular part of the pleading has been imperfectly stated, and a verdict on an issue involving that averment is found, and it appears to the court, after verdict, that unless this averment were true the verdict could not be sustained in such case, the verdict cures the defective averment, which might have been bad on demurrer." The authorities upon this subject are all stated in 1 Williams, Saund. (Last Ed.) 260, note "i," citing Reg. v. Heyman, 12 Cox, 383.

Under the heading of "Motion in Arrest of Judgment," counsel for the state say:

"As we read the indictment, the averments in the third count are: First, that one Andrew Hauser, on the 10th day of February, 1902, feloniously did publish as true a certain false, forged, and counterfeited order for the payment of money.

"Second, that this order was known as a bill for telegraphic services.

"Third, that it was a bill of the Western Union Telegraph Company against the Fruit Dispatch Company.

"Fourth, that the bill was dated February 10th, and contained a list of telegrams represented to have been sent and received by the Western Union Telegraph Company for and on account of the Fruit Dispatch Company, both domiciled in New Orleans.

"Fifth, that the bill contained the charges due therefor; i. e., the amount of money the Fruit Dispatch Company was indebted to the Western Union Telegraph Company for these telegrams.

"Sixth, that one Clarence Rein was at this time—'then and there'—a clerk and employé of the Fruit Dispatch Company.

"Seventh, that when such a bill for telegraphic services was signed and certified as correct by the said Clarence Rein it became an order on the Fruit Dispatch Company to

pay the Western Union Telegraph Company the total amount of money represented on the bill to be due. [Indictment reads, 'when said bill,' etc.]

"Eighth, that this bill [published by Hauser as an order on the 10th of February] was made an order on the same day, the 10th of February, by Clarence Rein fraudulently and feloniously certifying and signing it as correct.

"Ninth, that Clarence Rein, when he made this bill an order by fraudulently and feloniously signing it as correct, did so at the instigation of Hauser and while acting as the confederate of Hauser.

"Tenth, that Hauser had himself falsified [falsely made] the said bill before his confederate made it an order.

"Eleventh, that when the order was published it was 'with intent to cheat and defraud.' "

Section 833 of the Revised Statutes of 1876 declares that "whoever shall forge or counterfeit, or falsely make or alter, or shall procure to be falsely made, altered, forged or counterfeited, or shall aid or assist in falsely making, altering, forging or counterfeiting any public record, any certificate or attestation of any public officer, in any matter wherein his certificate or attestation is receivable, and may be taken as legal proof, any charter, deed, * * * order, acquittance, or discharge for or upon the payment of money or delivery of goods, * * * or shall alter [utter] or publish as true any such false, altered, forged or counterfeited record, certificate or attestation, charter, deed, * * * order, acquittance, discharge or receipt, knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person, * * * on conviction, shall be punished by imprisonment at hard labor, for not less than two, nor more than fourteen years."

In passing upon the motion in arrest of judgment, we exclude from our consideration any of the evidence taken on the trial, and deal with matters on the face of the papers. State v. Green, 36 La. Ann. 185; State v. White, 37 La. Ann. 172; State v. Roland, 38 La. Ann. 18; State v. Pete, 39 La. Ann. 1095, 3 South. 284; State v. Kline, 109 La. 603, 33 South. 618.

We must assume that from the standpoint of mere evidence the judgment was correct. We may say here that the only objection raised below as to evidence was as to the correctness of the action of the court in submitting to the jury, for the purpose of having their character determined, the instruments declared upon, which question we have just ruled upon. We may also say, in respect to the evidence, that the accused called for no bill of particulars under the indictment as framed.

Appellant urges that the instruments declared upon are not, under the recitals of the indictment, an order for the payment of money, and do not fall under the terms of section 833 of the Revised Statutes of 1876. The jury, under evidence not objected to, has determined that they did, and the district court concurs in their conclusions. In State v. Stephen, 45 La. Ann. 702, 12 South. 883, this court held that it was not necessary, for the purposes of a prosecution under section 833 of the Revised Statutes, that the order for payment of money should be full and complete on its face; that it was sufficient if it be shown to be such by the known and accustomed dealings between the parties. It being averred that the instruments declared on were orders for the payment of money, and the jury and the court being both of that opinion, we must assume (having no right to examine into the testimony) that, even if they were not so on their face, they were proved to be so under "the known and accustomed dealings between the parties."

Appellant insists that the instruments declared upon were not alleged to have been published by Hauser as true after they had

become, through the certificate of Rein, an order for the payment of money. The indictment charges that Hauser on the 10th of February, 1902, published as true a certain false "order for the payment of money," and later that it "became an order for the payment of money" when signed and certified by Rein. If so, the publishing must be held to have been charged after the signing as having been made of the same by Rein. It is urged that it was not alleged that Hauser was present either when the certificate of correctness was attached to the statement, or when Rein handed the same to the cashier. The indictment charges that Hauser published the order for the payment of money, but does not state how the publishing was made by him. It is not averred that it was handed to Rein, or handed by Rein to the cashier; non constat that Hauser did not deliver them himself. We do not think it was at all necessary, so far as Hauser was concerned, that he should have been present when Rein certified to the correctness of the statements. We do not think the alleged fact that Hauser had been assisted in making the instruments declared on "become" an order for the payment of money had the effect of relieving Hauser from being held liable as a principal, if after the instruments became an order for the payment of money he issued it. We do not think it was necessary to have charged in the indictment that the Fruit Dispatch Company was indebted to the Western Union Telegraph Company, or to Hauser or any other person, or that there was any obligation on the part of the Fruit Dispatch Company to pay him any sum whatever. Am. and Eng. Ency. of Law (2d Ed.) p. 1096.

The defendant in the several counts was charged with conspiring to commit "forgery," with having committed "forgery," and with having published as true a "forged" order for the payment of money; but he is also charged therein with having entered into a conspiracy with Rein to make a "false" order

for the payment of money, that he had in fact falsely made an order for the payment of money, and that he did feloniously publish as true a "false" order for the payment of money—the said "bill" having been "falsely made" by Hauser with intent to cheat and defraud.

The jury substantially acquitted the accused upon the two first counts, but simultaneously found him guilty upon the third. The precise grounds upon which the defendant was not found guilty upon the first two counts is not known to us, but it was evidently some theory which left the accused chargeable upon and guilty upon the third count.

It is not claimed that the acquittal of the accused upon the first two counts carried with it as a consequence the failure of the charge contained in the third. Clarke's Criminal Proc. § 110; Commonwealth v. McLaughlin, 12 Cush. 612.

The last contention of the accused is that no legal verdict could be rendered upon the third count of the indictment, as it was not charged therein that Hauser published the order "knowing the same to be false and counterfeited, or that he did so with intent to cheat and defraud."

The indictment charges, in the third count of the indictment, that the bill alleged to have been published by Hauser "had been falsely made by him with intent to cheat and defraud"; but there is no specific or direct averment that Hauser published it, "knowing it" to be false and counterfeited.

On this branch of the case counsel for the state say:

"We contend, first, that the indictment is full and complete; second, that defects such as defendant contends exist could only be taken advantage of before or at trial, and cannot be urged for the first time in a motion in arrest of judgment.

"In the motion in arrest of judgment the first contention is that in the indictment 'it

is not alleged that Andrew Hauser published as true a false, forged, and counterfeited order for the payment of money "knowing the same to be false, forged, and counterfeited," or that he did so "with intent to cheat and defraud."'

"Says Dr. Wharton:

"'In case of uttering and publishing, a scienter must be averred, though it is sufficient that this averment should be in general terms.' 1 Wharton, Cr. Law, 742.

"Our statute uses the words, 'knowing the same to be false, altered, forged, or counterfeited.' But we submit that, while these words may be all that is necessary in alleging the scienter, it by no means follows that these identical words, and no others, must be used. As we understand the law, any averment which will positively show guilty knowledge is sufficient. Must all of the words—i. e., 'false, forged, altered, or counterfeited'—be used, or will one suffice?

"To allege, in the count of the indictment charging the publishing, that the accused forged the identical instrument on the same day he published it, is to our mind alleging positively a knowledge that the accused knew, when he published the instrument, that it was a forgery. It is averring the scienter in a clear and unmistakable manner, and giving the accused definite information as to what proof the state will offer to establish it. We submit that United States v. Carll, 105 U. S. 612, 26 L. Ed. 1135, and the other cases cited by counsel for the defendant, do not support his contention, as an examination of those cases shows that the indictments contained absolutely nothing showing any guilty knowledge. None of the cases cited can be construed as saying that the identical words, 'knowing the same,' etc., must be used; and such, as we understand it, is counsel's contention.

"We submit that Wilson's Case, 14 La. Ann. 446, supports our contention. In that case the decision was reversed, because, to use the language of the decision, 'it is possible that a counterfeit bill might be passed with an intent to defraud, without a knowledge of its being such, as where the accused supposed it was really a bill upon an insolvent bank, at the time he uttered the same.' If the indictment in Wilson's Case had alleged that he himself had counterfeited the bill, we submit that such an allegation would, from this decision, have been sufficient.

"We admit that all the ingredients which enter into the offense must be stated, but it is submitted that the exact words of the statute are not indispensable. The pleader may, if he chooses, use words which are their equivalents in meaning, or, if again he chooses, words which are more than their equivalents, provided they include the full significations of the statutory words. 2 Bishop, New Cr. Pro. 612.

"The words 'knowing the same,' etc., are not technical words, such as the word 'feloniously,' or such as, in an indictment for murder, the words 'malice aforethought'; but they are words used to describe the wrongful act which the statute forbids. Therefore, any words equivalent to the words used in the statute may be substituted. 'Hence, where a word not in the statute is substituted in the indictment for one that is, and the word thus substituted is equivalent to the word used in the statute, or is of more extensive signification than it, and includes it, the indictment may be sufficient. Thus, if the word "knowingly" be in the statute, and the word "advisedly" be substituted for it in the indictment, the indictment may be sufficient.' Wharton, Cr. P. & P. 23.

"So, in State v. Brown, 41 La. Ann. 346, 6 South. 541, our Supreme Court said: 'It is well settled that wherever there is a change made of phraseology, and a word not in the statute is substituted in the indictment for one that is, and the word thus substituted is equivalent to the word used in

the statute, or is of more extensive signification than it, and includes it, the indictment will be sufficient'—citing State v. Williams, 32 La. Ann. 335, 36 Am. Rep. 272. See, also, State v. Moore, 38 La. Ann. 66. And on the same principle your honors said in State v. McDaniel, 45 La. Ann. 688, 12 South. 751: 'If the word used is equivalent to that for which it was substituted, we think the requirements of the law have been complied with, and the accused has no ground of complaint, particularly if the prosecution undertook to establish, by evidence responsive to its charge, an intent of a worse character than that which the statute required to be laid; and that is what the state has done.' In the American Digest, Century edition, vol. 27, p. 590, § 290, title 'Necessity of Using Exact Words,' many similar cases are cited.

"Second. The words 'with intent to cheat and defraud' are contained in the indictment. They are placed last in the charge. They are placed last in the statute.

"But on behalf of the defendant it is contended that these words, as they are placed, do not refer to the publishing of the false order, and that, therefore, the indictment is fatally defective. We submit that they do refer to the publishing. We submit that the verdict of the jury finally decides that this allegation does refer to the publishing. Before a verdict of guilty on this count could have been brought in, the proof must have shown beyond all reasonable doubt that the publishing of the false order was with intent to defraud. Whatever merit there might have been in a motion to quash this count of the indictment on the ground that the allegation, as placed, was vague and indefinite, or whatever merit there might have been in a demurrer filed before trial, we submit that the verdict has cured any ambiguity or vagueness as to the words, and that the objection, after verdict, comes too late.  *  *  *

"An examination of the indictment will show it contained three counts—one for conspiracy to commit forgery, one for forgery, and one for publishing a forged order as true. Since the words 'with intent to defraud' are necessary in the third count, and since it is undoubtedly intended only to charge the publishing in this third count, we submit that the only fair construction is to construe these words as referring to the manner of the publishing.

"If we understand correctly pages 61–63 of the very able brief filed on behalf of defendant, the words 'with intent to defraud' must (so he contended) be construed as applying to the false making of the bill, because (so we understand the contention) forgery must be correctly and legally charged in this count, as well as the publishing.

"The indictment as we read it clearly alleges: (1) Hauser falsely made a bill (which was known as the bill for telegraphic services). (2) Rein feloniously and fraudulently, and acting as a confederate, and at the instigation of Hauser, signed this false bill as correct. (3) Rein's so signing it converted this false bill into a false, and therefore forged, order. (4) Hauser published as true this false and forged order. (5) He so published it with intent to defraud.

"We admit that one count could contain both a charge of forgery and a charge of publishing. State v. Flint, 33 La. Ann. 1288. We, however, suggest that, where both crimes are charged in two separate counts, it is not necessary, in the second count for publishing, to fully and completely set out the forgery. In State v. Fritz, 27 La. Ann. 361, it was contended: '(5) The jury, in their finding on the second count, predicated the forgery and guilty knowledge on the first count. A new trial and nolle prosequi having been subsequently ordered on the first count, the finding on the second count cannot stand by itself.' Said the Supreme Court: '(5) We regard the averments of the second count as ample to apprise the defendant of

the charge against him, and to put him in possession of all information necessary to prepare the defense.' Suppose it had been the intention of the district attorney to charge in this count both the forgery and the publishing, and the forgery was correctly charged, but the publishing incorrectly; then we submit the allegations referring only to the publishing would be rejected as surplusage, and the verdict of guilty on the third count could mean guilty of forgery. If forgery is correctly charged in this count, the words 'with intent to defraud' referring to the forgery, and not to the publishing, then is not that part of the count referring only to the publishing to be rejected as surplusage, and is not the indictment good for forgery? The indorsement of the character of the offense cannot be considered. State v. De Hart, 109 La. 570, 33 South. 605. We suggest this only as a reply to the defendant's contention, as in this third count the prosecuting officer clearly intended to charge the publishing, and not the forgery, and the jury clearly intended to convict Hauser of the publishing, and, in our opinion, the count is good in law.

"Where the offense is stated in plain and concise language in such a manner as to enable a person of common understanding to know what is intended, and with a degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment, the indictment will be held sufficient; all that is required being that the defendant must be informed of the particular acts relied upon as constituting his guilt, in order that the judgment will be effectually pleaded in bar of another indictment for the same offense. 9 Ency. of Pleading and Prac. 554. And to the same effect are all the text writers."

Conceding that, under the circumstances of this case, the third count has to stand or fall on the sufficiency of its own recitals—in other words, conceding that its language cannot be more specific than it actually is by reference to that employed in the previous counts—we think it can, on a motion in arrest of judgment, successfully withstand the attack made upon it in respect to the averment of knowledge by the accused.

In the count it is alleged that Andrew Hauser did feloniously publish as true "a certain false * * * order for the payment of money," which bill was certified as correct by Clarence Rein; the said bill having been "falsely made by the said Andrew Hauser with intent to cheat and defraud."

If the "bill" was falsely "made" by Hauser "with intent to cheat and defraud," he certainly had knowledge of the fact of this falsity, and this knowledge must have existed and accompanied his act in feloniously publishing the same. The jury was authorized, through a combination of the two sentences, to render the verdict it did. If there was any objection to be urged to the indictment, it should have been advanced either in a demurrer or in a motion to quash. We are not authorized to set aside the verdict of the jury or reverse the judgment.

The judgment appealed from is hereby affirmed.

BREAUX, J., dissents.