Statement of the Case.
NICHOLLS, J.
In an indictment found by the grand jury for the parish of Caddo it was charged that the defendant did on the 16th of January, 1905, “establish, open, operate, conduct, and work a certain pool room, located on Texas street, between Market and Edwards streets, in the city of Shreveport, contrary to the form of the statute of the state of Louisiana in such case made and provided and against the peace and dignity *264 of the same.” He was tried before the district judge, found guilty and sentenced to pay a fine of $325.
He relies for reversal on the grounds' assigned in three bills of exception — one to the court’s overruling a demurrer to the evidence ; another to the overruling of a motion for a new trial; another to the ruling of a motion in arrest of judgment.
The first bill is as follows:
“Be it remembered that on the trial of this case, after the state had introduced all of its evidence, which evidence was an. agreed statement of facts and in words and figures as follows :
“ ‘State of Louisiana v. A. E. Maloney.
“ ‘No. 3085. District Court, Caddo Parish, La.
“ ‘In the above case it is admitted, for the purposes of this trial: That the defendant is president of the Pelican Telegraph Company, a corporation organized under the laws of the state of Louisiana, as per copy of charter attached, and is the principal stockholder therein. That it has leased a line of wire from Shreveport to Texarkana, Arkansas, and advertised to receive any and all messages that may be tendered to it; but the bulk of its business is in wiring offers of bets as hereinafter stated. That it has an office on Texas street, in the city of Shreveport, parish of Cá'ddo, Louisiana, to which its wire extends, and in its office it had posted the various races that are being run at the race courses in the country, and oh a blackboard it puts the names of the various horses that are to run in these races, with the different odds that are offered on each. That from time to time the odds on the different horses are changed on said blackboard according to advices received. That before a race is run any party that desires to do so signs a telegram himself, or has some one other than the defendant to sign it for him, addressed to Shifting & Mayfield, of Texarkana, Arkansas, requesting them to bet for the party signing same any amount that is named in the telegram on a horse named, to run at the track mentioned, on the odds posted on the board. That for sending this wire the defendant’s company charged the party twenty-five cents and gives him a receipt for the amount of money that he then deposits, in the form of attached receipt, marked “A.” That this wire is sent by the company to S. & M., at Texarkana, Arkansas, and when the race is run these parties in Texarkana wire the result back to the defendant’s company, who calls out the result; that is to say, the post time of the race is called, then the start, and during the progress of the race the order of the horses participating therein is called at the different quarters, and finally the winners are announced, then, when the race is confirmed, the amount of the winning of the successful betters is paid over to .them by the defendant, who is returned this amount in a monthly settlement made by him with said S. & M.
“ ‘The defendant’s company receives these telegrams and sends them to Texarkana, Arkansas, for acceptance by said S. & M., and when they accept them they place the bet on the race as requested. If they do not accept them, they wire defendant here, and he refunds to the better the amount deposited.
“ ‘It is admitted that defendant receives from S. & M. commission of twenty per cent, on the amount of all such bets that are sent to them over the wires of said company. The company has in its office a telegraph operator, who receives and sends these wires over the company’s lines and calls out the progress of the race as he receives them to the persons that may be then assembled in said office. That there is also in the said office or place of business a board maker, who posts the odds; a man who writes the receipt for the on,e who places his money on a horse; an employs who figures the odds for those who desire to place a bet on a combination of horses in different races; a man who pays the successful betters; and a bookkeeper. It is also admitted the defendant generally supervises the business and directs the duties of the above named employés.
“ ‘That usually there are about fifteen or twenty persons when these wires are being received as before stated. The form of telegram used in sending such offers to bet is hereto attached and marked “B”; the first blank meaning “to win,” the second for “second place,” and the third blank for “third place” in the race.
“ ‘It is admitted that the defendant on the date named in the indictment was so conducting this place, and in the manner named for this said company sent a number of telegrams to S. & M., at Texarkana, Arkansas, for various persons of Shreveport, requesting that they bet various amounts on various horse races then being about to be run at various tracks outside of the state, some of which won, and the money was paid to them here, and others lost.
“ ‘It is admitted that there is posted in the office of said company in large and legible letters the following notice:
“ ‘ “No bets are received here on horse races. Your commissions will be received and placed outside of the state.
“ ‘ “Pelican Telegraph Company.”
“ ‘[Signed] Alexander & Wilkinson,
“ ‘Attys. for Defendants. “‘J. M. Foster,
“ ‘D. Atty., 1st District.’ ”
Then follows a certified copy of the charter of the Pelican Telegraph Company, executed by notarial act in the parish of Caddo, together with a certificate of the Secretary of the State of Louisiana to the effect that *265 a copy of the same had been recorded In his office, and approving the charter.
The bill then proceeds as follows:
“The defendant filed a demurrer to said evidence, charging that said evidence disclosed the commission of no crime by him under the laws of the state of Louisiana, and that said evidence particularly failed to show that he was keeping a pool room in violation of the laws of said state, as is fully shown by said motion, which is hereto, annexed and made part hereof. That after argument of said case and the said demurrer the court overruled the same in a written opinion, which is hereto annexed and made part hereof, and held that the defendant was guilty under said evidence and agreed statement of facts, and that said facts did show and constitute a crime under the laws of the state of Louisiana, and that under said facts said defendant was guilty of conducting and operating a pool room in the state of Louisiana, for the reasons and causes as set forth in said written opinion, hereto annexed and made part hereof.
“Thereupon the defendant excepted to the overruling of said demurrer to the evidence aforesaid, and excepted to the court finding the defendant guilty under said agreed statement of facts, and presents this his bill of exceptions which was read, signed, and filed in open court on this the 24th day of February, 1905.”
The demurrer to evidence referred to was annexed to bill of exceptions, and was as follows:
“Now comes the defendant and demurs to the evidence herein presented, and says, for cause of demurrer: That said evidence does not show the commission of any crime or offense by him under the laws of Louisiana, and especially does said evidence fail to show the commission by him of the offense set forth and designated in the bill of indictment herein presented. That it does not show that he opened, operated, conducted, or worked in a pool room in this state, nor does said evidence show that said place of business described in said evidence is or was a pool room within the meaning of the laws of said state.
“That for these reasons this court is without right or jurisdiction to proceed further in said cause, except to order the discharge of this defendant, and is without right or jurisdiction to fine or imprison this defendant for the acts set forth in said admitted facts herein.
“In view of the premises, he prays to be hence discharged and for general relief.”
Defendant filed the following motion for a new trial:
“In the above cause comes the defendant and shows unto the court that the opinion and judgment herein is contrary to the law and the evidence in said case, in that the evidence fails to show that the defendant opened, conducted, operated, or worked in a pool room in this state, and for the further reason that said evidence failed to show that there was any bets made or accepted on any horse race in said place; the betting being done outside of the state, and not in the state of Louisiana.
“Defendant further shows to the - court that Act No. 128 of 1904, under which this prosecution is brought, is unconstitutional and null and void, for the reason that said act does not define the crime denounced therein, nor is same defined or designated by any act or law of the state of Louisiana, and, further, that said act embraces more than one object and violates thereby article 31 of the Constitution of 1898.
“Further, that the indictment herein does not inform the defendant of the nature and cause of the accusation against him, and thereby violates article 10 of the Constitution of 1898.
“That for all these reasons a new trial should be granted him and said judgment of conviction be set aside and annulled.
“Wherefore he prays that a new trial be granted him, and that he be discharged, and for general relief.”
The motion having been overruled, defendant filed the following bill of exceptions:
“Be it remembered that on the trial of the above case, the court having in a written opinion found the defendant guilty as charged in the bill of indictment in this case, and to which the defendant duly excepted and thereupon filed a motion for a new trial, as shown by said motion for new trial hereto annexed and made part hereof, and after submitting said motion for a new trial the court overruled the same and adhered to its original opinion and judgment in said case, and proceeded to sentence him under such opinion and judgment; that before sentence was pronounced the defendant then and there duly excepted to the overruling of said motion for a new trial, and annexes hereto and makes part hereof all of the evidence introduced on the trial of said case, and contends that thereunder and as shown thereby no crime whatever was committed by him under the laws of Louisiana, and especially was he not guilty of owning, operating, keeping, or working in a pool room in the manner and form as charged in said bill of indictment, and in testimony whereof he has prepared and presents this his bill of exception to the overruling of said motion for a new trial, which was duly read, signed, and filed in open court on this 25th day of February, 1905.”
He then filed the following motion in arrest of judgment:
“In this case now comes the defendant, and moves and prays the court to arrest the judgment herein and set aside the conviction herein of this defendant on the ground and for the reason that Act No. 128 of 1904, under which and by virtue of which this prosecution is brought and upon which the indictment is founded, is *266 utterly unconstitutional and null and void, and for the reason that said act fails and does not define the crime herein denounced, nor is same defined or designated by any other act of law of the state of Louisiana, and on the further ground that said act embraces more than one object, in that it makes or attempts to create four distinct crimes and thereby violates article 31 of the Constitution of 1898, and said indictment charges said four distinct crimes and is therefore bad; that therefore the indictment herein and the judgment of conviction thereon is null and void, and should be arrested and set aside, and your defendant discharged.
“Wherefore he prays that this motion in arrest of judgment be sustained, and that he be hence discharged, and for cost and general relief.”
Opinion.
The district judge, in overruling the demurrer to the evidence, assigned extended written reasons in support of his conclusion, and proceeded at once to adjudge the defendant “guilty as charged” and to sentence him. There was nothing to be done other than this. The case had reached the point where the next proper and necessary step in the proceeding was to "pronounce the final judgment to be rendered therein “on the law and the facts.” A “bill of exceptions” taken to that action was as uncalled for and improper as would have been a bill of exceptions taken to the verdict of a jury on the blended questions of law and fact which had been submitted to it. A bill which was taken and filed in the present ease correctly refers to the action of the judge which is now complained of as having occurred on the “trial” of the case, inasmuch as after the issues had been submitted to him on the facts and the law there had been unquestionably a trial, before a judgment by him had to be rendered. Had this particular case been one before a jury impaneled and sworn to try it, and had counsel, after all of the testimony had been introduced, agreed to submit the issues to the court on a demurrer to the evidence, the discharge of the jury would have inevitably followed, as there would have been no issues left on which a jury could be called on to pass. The subsequent action of the court in finding the accused guilty and sentencing him would place matters in the same position in which they would have been had the jury remained and passed upon the case, reaching the same conclusion as did the judge. The judge under the circumstances would have exercised functions of both jury and judge, and the judgment of the judge comes to this court as irrevocably fixed as to a conclusive finding of guilt against the accused as would be the verdict of a jury on the same subject. The jurisdiction of this court is under the Constitution of the state limited strictly to questions of law. In order to review the action of the district judge, and reverse it, this court would be forced by means of some process of its own to resolve the judgment into the original elements of fact and of law, which by combination and blending had been formed into the judgment, and then reach itself a new judgment which would be the result of its own blending and combination of the facts and the law. This it cannot constitutionally do. Were we to undertake to review the judgment of the district judge, and, differing from him as to what should be a correct conclusion on the law and the facts, reverse his judgment of “guilty,” the logical, inevitable, legal result would be that we would be compelled to substitute for the reversed judgment of “guilty” our own judgment of “not guilty” and bring at once the prosecution to an end on the merits in this court. We certainly could not, after determining all the issues of fact and of law in the case, remand it to the trial judge for a new trial; for there would be no issue left for the trial judge to try. The most that could be done would be to register our own decree, which would be final. This court is without power or authority in criminal cases to reverse on their merits judgments sent to it on appeal and pronounce final judgments therein. Counsel of accused parties have repeatedly made attempts to have this court go behind the verdict of the jury on the mat *267 ter of the guilt and innocence of the parties, • by means of motions for a new trial to which all the testimony adduced on the trial had been made a part, and on the' refusal of that application taking a bill of exception to such refusal, annexing thereto the motion, with its accompanying testimony and the reasons assigned by the trial judge for his ruling. This court has steadily resisted such attempts. The authorities on that subject are many of them cited-in' State v. Hauser, 112 La. 335, 36 South. 396. See, also, State v. Peterson, 2 La. Ann. 921; State v. Nelson, 3 La. Ann. 498; State v. Ward, 14 La. Ann. 673. There is, quoad the subject of this court’s jurisdiction, no difference in principle in going behind the verdict of the jury in the matter of the guilt or innocence of accused parties on an application for a new trial and going behind a final judgment of guilty rendered by a district judge, acting as both judge and jury, after all the testimony of which the case was susceptible had been submitted to him. In State v. Hauser, 112 La. 335, 36 South. 396, this court, referring to State v. Sweeney, 37 La. Ann. 2, used the following language:
“What was said in that case as to the finality of the conclusions reached by the jury upon questions of fact applied also to the conclusions which' the jury reached to the questions of law in determining the verdict as the guilt or innocence of the accused. The jury in this state are judges both of the fact and the law. This court is authorized to pass upon questions involving the admissibility or nonadmissibility of evidence before the jury, if they are properly presented to it, but not upon the effect of the evidence when it has once reached the jury. It is authorized to say whether questions of law as submitted to the jury were correct or not, and whether correct questions of law which the accused had the right to have had submitted were improperly refused or not; but, when the case once gets to the jury under legal conditions, we are powerless to review the correctness of its conclusions as to the blended questions of law and fact which were submitted to it. We cannot separate the one from the other.”
In State v. Porte, 9 La. Ann. 106, this court said:
“The only question upon which we can pass is as to the admissibility of the evidence, not as to its effect. Was it competent evidence under the indictment? Not whether it was itself sufficient to establish a sale and sustain a conviction.”
We have often, said that we would not pass upon certain questions unless presented by a bill of exceptions; but it is a mistake to conclude that, because a bill of exceptions had been reserved and taken, we would inquire into and dispose of the things complained of. It would be essentially necessary, that we could do so, .that the questions raised should be such as the court was authorized to adjudicate upon, and, besides, be presented at the time and in the manner and form which is required to enable us to do so. The accused in this case filed no demurrer, nOr did he move to quash the indictment. His first objections were raised on the demurrer to evidence introduced without objection of any kind from him, only leaving for determination the effect of the evidence in determining the law and the facts of the case. We are unable to separate them from each other as matters are presented to us.
The complaint embodied in the second bill of exceptions (the bill taken to the refusal of the court to grant a new trial) was the same as that made in the first bill, with the additional special contention that the evidence adduced had failed to show that there were any bets made or accepted in any horse race in said place, the betting being done outside of .the state, and not in the state of Louisiana, and the further contentions, first, that Act No. 128, p. 292, of 1904, under which the prosecution was based, was unconstitutional, null, and void, for the reason that said act did not define the crime denounced therein, nor was the same defined or designated by any law or act of Louisiana, and that said act embraced more than one object and violated thereby article 31 of the Constitution of 1898, and, second, that the indictment filed did not inform him *268 of the nature and cause of the accusation against him, thereby violating article 10 of the Constitution of 1898.
The right accorded to parties convicted of crime to apply for a new trial, and the power and authority conferred upon district courts to grant the same, is the great remedy afforded by the lawmaker for the ascertainment and correction of any errors and resulting injury which may have taken place in the proceedings. Great latitude is given to the accused in the assignment of the grounds which might induce the district judge to allow a new trial. But grounds which might properly be considered by the trial judge for that specific purpose are by no means grounds which can or should be considered by the appellate court. The appellate court is restricted to special complaints raised at the time and presented in the manner and form required by law or the rules of practice. Complaints urged, which, if well founded, would result not in a new trial, but as a complete rejection of the action and an absolute bar to any further prosecution, find no proper place in a motion for a new trial.
The motion in arrest of judgment was based upon the same grounds which were set up in the first and second bills of exception. It is a motion which has to be tried for error apparent on the face of the record. We are not permitted, in disposing of that motion, to examine, discuss, and act upon the testimony which was adduced on the trial and which may have been placed in the transcript. Act No. 128, p. 292, of 1904, is not unconstitutional as having been enacted in violation of article 31 of the Constitution of 1898. The object of the statute is set out and defined in the first declaration made in the title, that it “provides for the suppression of pool rooms.” .The other portions of the title are simply amplifications of that object, and announce the instrumentalities through which the proposed suppression is to be effected and the consequences resulting therefrom, all of which are germane to the declared object. Any one reading the first portion of the title would naturally anticipate finding in the body of the act the matters and things therein enacted. The fact that these matters were referred to in the title did not have the effect of destroying the constitutionality of the statute. The fact (if well founded) that the statute was so general as not to be susceptible of enforcement would not strike at the constitutionality of the act, but at its sufficiency and efficacy. The insufficiency of an indictment framed under a statute is an entirely distinct question from the constitutionality of the statute itself. Parties accused of crime have an unquestionable right to claim the benefit of the constitutional rights granted to them under the constitution touching indictments, but the right must be exercised and claimed as to time and manner and form according to the fixed rules of practice.
Appellant presents his claim for reversal on a motion in arrest of judgment found in a transcript which discloses the fact that he pleaded without objection to an indictment framed in the exact words of a statute; that he went to trial without interposing a demurrer to the indictment or motion to quash; that the issues were submitted on the indictment as found to the trial judge on evidence, not only acquiesced in, but actually consented to, with no bill of particulars having been asked for by the defense — all of this being followed by a judgment of the court seised of jurisdiction. Appellant himself admits and shows that the term “pool room,” used in the statute, has been defined by lexicographers and in decrees of different courts, and that it has a popular signification, though the term is a generic one covering different kinds of pools. He cites a number of these definitions in his brief. The state also cites a number of definitions, for instance:
*269 “Pool room.” A place where people bet or take chances. See Words & Phrases, tit. “Pool Room”; People v. McCue (Sup.) 83 N. Y. Supp. 1088.
The defendant might therefore have been in fact charged with having in violation of law kept a place where people took chances. When the parties thought proper to submit the issues to the judge on certain evidence introduced by consent, they occupied in the case the same position which they would have occupied had the state, on defendant’s application, filed a bill of particulars covering the condition of affairs which that testimony disclosed. Defendant could not claim that he had not been informed as to the nature and cause of the accusation against him.
We do not think the generality of the term “pool room” was such as to make the statute inoperative. Board of Com’rs v. Mialegvich, 52 La. Ann. 1292, 27 South. 790. The defendant had, however, the right to have had the specific kind of “pooling” which he was charged with operating at his place of business set out in a bill of particulars, had he thought proper to claim that right; but he did not do so. We think that the objections urged in the motion in arrest were cured by the trial and by the judgment rendered, under the circumstances. State v. Hauser, 112 La. 335, 36 South. 396.
For the reasons assigned, it is hereby ordered that the judgment appealed from be affirmed.