(105 So. 288)

No. 27200.

**STATE v. EGAN.**

(June 22, 1925. Rehearing Denied July 13, 1925.)

*(Syllabus by Editorial Staff.)*

1. Records ⬥14 — Information for refusing elector right to examine records need not allege that defendant was public officer.

Information for violating Act No. 242 of 1912, as amended by Act No. 255 of 1920, punishing custodian of public records, who refuses an elector the right to examine them, need not allege that defendant was public officer; allegation that he had custody and control of records being sufficient, in view of section 9 of the act.

2. Records ⬥14 — Information for refusing elector right to examine pay roll is sufficient, if it alleges that pay roll was public record.

Information for violating Act No. 242 of 1912, as amended by Act No. 255 of 1920, punishing custodian of public records, who refuses elector the right to examine records, need not aver that pay roll which elector sought to examine was public record, as defined by section 1 of the above act; allegation that pay roll was public record in defendant's custody being sufficient.

3. Records ⬥14 — Information for refusing elector right to examine pay roll of certain board need not allege that board was created by Constitution or laws.

In prosecution under Act No. 242 of 1912, as amended by Act No. 255 of 1920, punishing custodian of public records, who refuses elector the right to examine records, information charging that custodian of pay rolls of board of control for the New Basin canal and shell road refused elector permission to examine records is sufficient, without alleging that such board was created by Constitution or laws, or that it was political corporation or governmental agency, in view of Const. 1921, art. 19, § 20, and Act No. 144 of 1888, and amendatory acts (Act No. 82 of 1896, Act No. 10 of 1904, Act No. 129 of 1906, and Act No. 60 of 1910).

4. Indictment and information ⬥196(5) — Records ⬥14 — Information for refusing elector right to examine records must allege that application for examination was made during business hours, but such allegation may be waived.

In prosecution for violating Act No. 242 of 1912, as amended by Act No. 255 of 1920, punishing custodian of public records, who refuses elector right to examine records during regular business or working hours, information must allege that application for examination was made during regular business or working hours; but defendant cannot complain of omission of such allegation, when counsel before trial specifically waived this omission.

5. Statutes ⬥107(3) — Title of act, amending another act and adding a section thereto, held not to embrace two objects.

Title of Act No. 255 of 1920, amending Act No. 242 of 1912, reciting that purpose of act is to amend and re-enact certain sections of Act No. 242 of 1912, and to amend such act by adding another section, punishing destruction and stealing of public records, does not embrace two different objects, in violation of Consts. 1898 and 1913, art. 31.

Appeal from Criminal District Court, Parish of Orleans; Alexander C. O'Donnell, Judge.

Edward Egan was convicted of violating Act No. 242, of 1912, as amended by Act No. 255 of 1920, punishing a public officer for refusing an elector or taxpayer the right to examine a public record, and he appeals. Affirmed.

St. Clair Adams and Martin H. Manion, both of New Orleans, for appellant.

Percy Saint, Atty. Gen., and Henry Mooney, Dist. Atty., and J. Bernard Cocke, Asst. Dist. Atty., both of New Orleans (Percy T. Ogden, Asst. Atty. Gen., of counsel), for the State.

O'NIELL, C. J.  Appellant was convicted of violating Act 242 of 1912, amended by Act 255 of 1920. By the sixth section of the act every elector or taxpayer has the privilege of examining, copying, photographing and making memoranda of any public record, as defined in the first section of the act. The ninth section makes it the duty of any person having custody or control of a public record, as defined in the act, to present it to any elector or taxpayer who may apply for it during the regular office hours or working hours of the person to whom the application is made. The sixteenth section declares that any person having custody or control of a public record, who shall violate any of the provisions of the act, shall be guilty of a misdemeanor and be punished by fine or imprisonment, etc.

The charge in the bill of information was:

"That one Edward Egan, late of the parish of Orleans, on the 31st day of January, in the year of our Lord one thousand nine hundred and twenty-five, with force and arms, in the parish of Orleans aforesaid, and within the jurisdiction of the criminal district court for the parish of Orleans, being then and there in the custody and control of a public record, to wit, the pay rolls of the board of control for the New Basin canal and shell road, did willfully and unlawfully fail and refuse to permit and allow one E. E. Moise, an elector of the state of Louisiana, to examine and take memoranda of said public record, contrary to the form of the statute," etc.

It was not charged that the refusal to allow Moise to examine the record occurred during the regular office hours or working hours of the defendant, Egan. When the case was called for trial, however, the attorney for Egan called the court's attention to what he deemed defects in the affidavit and bill of information, and announced that the defendant waived all complaint about the errors and omissions and was ready for trial, thus:

"By Mr. Manion: If your honor please, the accused wants to make a statement. The accused wishes to direct the attention of the court and of the state to the fact that the affidavit is dated—the signed affidavit, signed by Mr. Moise—the affidavit is dated February 2, 1924, and alleges an offense to have been committed January 31, 1925, and the accused does not wish to avail himself of the technicality.

"And the accused further directs your attention and [the attention] of the state to the fact that there is nothing in the affidavit nor in the information where the accused failed or refused to exhibit to Mr. Moise the books in his possession. The act recites specifically that the books shall be there for exhibition during the working or office hours, and we have not been informed of the day of the week, or of the hour, in conformity with what we understand the act requires that we should be informed. Notwithstanding this technicality, the accused is ready, for the reason that he wishes to be discharged; that he is not guilty, and does not wish a discharge on a technicality. I wish to make that statement."

The trial was commenced then by the state's calling to the witness stand the prosecuting witness, Moise. Without any objection on the part of the defendant, Moise testified that it was 13 minutes before noon, on Saturday, the 31st of January, 1923, when he called at the office of the defendant, superintendent of the New Basin canal and shell road, and asked for and was refused permission to examine the pay rolls of the board; and, without objection on the part of the defendant, Moise testified that the board of control for the New Basin canal and shell road was a state board, and that he (Moise) was a qualified elector, entitled to examine the pay rolls of the board.

The defendant and three employees in his office testified that it was 15 minutes after noon, and therefore during the half holiday, when Moise called and asked for the pay rolls. He was a newspaper reporter, whose purpose, it appears, was to compare the pay rolls with those which he had examined previously, to see whether names were improperly added in aid of a political campaign which was then going on.

The only question at issue in the case was

whether it was before or after 12 o'clock when Moise called at the superintendent's office and asked for the pay rolls. The superintendent made the further defense that the pay rolls were in use when Moise asked for them, and that he, the superintendent, told Moise that he might have them on Monday morning. Section 10 of the statute, however, provides that, when a public record which an elector or a taxpayer demands the privilege of examining is "not immediately available because of its being in active use at the time of the application," the chief of the office or the person next in authority among those present shall so certify in writing, and fix a day and hour, within three days, for the applicant to exercise his privilege of examining the record. It is conceded that the certificate was not given in this instance.

After the defendant was convicted, his attorneys—another attorney having been employed—filed a motion for a new trial, and, that being overruled, filed a motion in arrest of judgment, which was also overruled. Bills of exception were taken to the overruling of the motion for new trial and the motion in arrest of judgment, which were the only bills of exception taken to any of the proceedings.

The motion for new trial was on the ground that the conviction was contrary to the law and the evidence, because it was based upon the testimony of the prosecuting witness alone, against the otherwise unimpeached testimony of the defendant and three other witnesses. It is conceded by the learned counsel for appellant that we have not jurisdiction of the question decided by the district judge, in overruling the motion for a new trial, because it was merely a question of fact as to the defendant's guilt or innocence.

The motion in arrest of judgment was based upon two distinct propositions, viz.:

First, that the bill of information was lacking in certain allegations, said to be essential requirements of Act 242 of 1912, as amended by Act 255 of 1920; and, second, that the statute was unconstitutional.

It was specified in the motion in arrest of judgment that the bill of information was defective, in that it did not contain these averments, viz.: (1) That the defendant was an officer of the board of control for the New Basin canal and shell road, or that he held any official position; (2) that it was during the regular office hours or working hours of the defendant when Moise applied for permission to examine the pay rolls; (3) that the pay rolls were used, or had been used, or were prepared for use, in the conduct of the business, or in some transaction, work, duty, or function, of the board of control for the New Basin canal and shell road; (4) that the board of control for the New Basin canal and shell road was created by the Constitution or a law of the state, or that it was a political corporation or governmental agency, whose pay rolls were public records; (5) that the pay rolls mentioned in the bill of information related to the receipt or payment of money received or paid by or under authority of the Constitution or laws of the state.

### Opinion.

[1] It was not essential for the state to allege, in the bill of information, that the defendant was a public officer. The allegation that he had the custody and control of the alleged public record was in accord with the ninth section of the statute.

[2] It was not necessary for the state to aver, specifically, in the bill of information, that the pay rolls were within the definition in the first section of the statute, in that they were used, or had been used, or were prepared for use, in the conduct of the business, etc., of the board, or that they related

to the receipt or payment of money received or paid by or under authority of the Constitution or laws of the state. The allegation in that respect, that the pay rolls of the board were public records, in the defendant's custody and control, was sufficient.

[3] It was not necessary for the state to aver in the bill of information that the board of control for the New Basin canal and shell road was created by the Constitution or a law of the state, or that it was a political corporation or governmental agency, whose pay rolls were public records. The allegation that the pay rolls of the board, in the defendant's custody and control, were public records, was sufficient. Section 20 of article 19 of the Constitution, declaring that the state shall not divest itself of its ownership or control of the New Basin canal and shell road, and the Act 144 of 1888, providing for the appointment of a superintendent and board of control for the New Basin canal and shell road, and the amending acts, Act 82 of 1896, Act 10 of 1904, Act 129 of 1906, and Act 60 of 1910, inform us that the board of control for the New Basin canal and shell road is one of the state's governmental agencies, and that the superintendent is a public officer.

[4] We are of the opinion that, if the defendant had not waived the point, the bill of information would not have been valid without an averment that the application of E. E. Moise to examine the pay rolls was made during the regular office hours or working hours of the defendant. The ninth section of the statute makes it the duty of any person having custody or control of a public record to present it to any elector or taxpayer "who shall apply for the same during the regular office hours or working hours of the person to whom the application is made." Hence it would not be violative of the statute for a custodian of a public record to refuse to present or show it to an elector or a taxpayer, unless he applied for the privilege during the custodian's regular office hours or working hours.

The defendant, however, had the right to waive and did waive his right to complain of the bill of information in that respect. When we say that he did waive his right to complain of that defect in the bill of information, we have reference to this particular statement which the attorney then representing him made to the court, immediately before the trial was commenced, viz.:

"The act recites specifically that the books shall be there for exhibition during the working or office hours, and we have not been informed of the day of the week, or of the hour, in conformity with what we understand the act requires that we should be informed. Notwithstanding this technicality, the accused is ready, for the reason that he wishes to be discharged; that he is not guilty, and does not wish a discharge on a technicality."

The defendant thus consented that the bill of information should be regarded as if it did contain the averment that the application of E. E. Moise to examine the pay rolls was made during the regular office hours or working hours of the defendant, Egan. It was not forbidden by public policy that the defendant, accused of a misdemeanor, should waive the point that the bill of information lacked an averment of an essential element of the offense, as defined by the statute.

"An accused may waive his constitutional, statutory, or common-law rights, except when forbidden by some superior counter principle of law deemed necessary for his protection." State v. Rose, 114 La. 1065, 38 So. 860; State v. Maloney, 115 La. 498, 39 So. 539; State v. Duncan, 118 La. 702, 43 So. 283, 10 L. R. A. (N. S.) 791, 11 Ann. Cas. 557.

The statement made to the court by the learned counsel for the defendant, before the trial, was an acknowledgment that he was as well "informed of the nature and cause of the accusation against him"—as the Constitution says—as if it had been alleged in the bill of information that the de-

fendant's refusal to exhibit his pay rolls occurred during his regular office hours or working hours.

[5] The only remaining question is whether the statute is unconstitutional. The plea is that Act 255 of 1920, amending Act 242 of 1912, or the act of 1912 as amended, has two distinct objects, in violation of article 31 of the Constitution of 1898 and of the Constitution of 1913, which required that a statute should have but one object, which should be expressed in its title. We quote the defendant's plea, viz.:

"That the said Act 255 of 1920, which amends Act 242 of 1912, under both of which statutes said information was drawn, is unconstitutional, null, and void, in that the title of said Act 255 of 1920 embraces two different objects, namely:

"(a) The amendment of Act 242 of 1912, declaring what records, writings, and other papers shall be public records, and providing for the examination thereof by certain designated persons, and

"(b) The addition to said Act 242 of 1912 of a new section making it a crime, punishable in the state penitentiary, to willfully destroy, conceal, mutilate or steal any public record," etc.

The act of 1912 had, originally, 17 sections. The act of 1920 amended the title of the act of 1912, and amended, in some particulars not important to this case, sections 1 and 5, and added a section, numbered 18, making it a felony willfully to destroy, conceal, mutilate or steal, or to attempt to destroy, conceal, mutilate or steal, any public record, with the intent to remove or erase the same as evidence of the public transaction which it records. The object of this new section is not altogether foreign to that of the original act, as expressed in its title. The broad, general purpose or object of the original act was to protect and preserve public records and to make them available as such, and the addition of the eighteenth section was in furtherance of that ob-

ject. The object expressed in the title of the act of 1912 was:

"To declare what records, writings, accounts, letters and letter books and copies thereof shall be public records; to provide for the examination, copying, photographing and taking of memoranda of public records, and to authorize certain persons to examine, copy, photograph and take memoranda thereof; to define the duties of all persons having custody of public records; to provide for the preservation of all public records; and to provide penalties for the violation of this act."

The object expressed in the title of the Act of 1920 was:

"To amend and re-enact section one and section five of Act No. 242 of 1912, approved July 11, 1912, entitled 'An act to declare what records, writings, * * *' and to amend and re-enact the title of the said act, and further to amend said Act 242 of the General Assembly for the year 1912 by adding thereto another section making it a crime to willfully destroy, conceal, mutilate or steal any public record, to attempt to destroy, conceal, mutilate or steal any public record, with the intent to remove or erase the same as evidence of the public transactions which it records, and to provide a penalty therefor."

By the first section of the act of 1920, the title of the act of 1912 is declared amended and re-enacted to read as follows:

"An act to declare what records, writings, accounts, letters and letter books, maps, drawings, memoranda and papers and copies thereof shall be public records; to provide for the examination, copying, photographing and taking memoranda of public records; and to authorize certain persons to examine, copy, photograph and take memoranda thereof; to define the duty of all persons having custody of public records; to provide for the preservation of all public records; to exempt certain public records from the application of this act and to provide penalties for the violation of this act."

It is not denied by the learned counsel for appellant that the adding of the eighteenth section to the act of 1912 was expressed plainly enough in the title of the act of 1920 as its object. It is not contended that the amended title of the act does not embrace the subject-matter of the new sec-

tion. Whether this new section alone, which appellant is not particularly concerned with, or the whole act, should be declared invalid if the object of the new section should be declared not embraced in the amended title of the act, is not an issue in the case. The only question is whether the subject-matter of the new section of the act might have been included as a part of the original act without giving it a dual object. Our opinion is that the new section might have been made a part of the act originally without giving it a dual object.

The conviction and sentence are affirmed.